**Alonzo THOMAS, Petitioner-Appellee,**

v.

**Dr. George J. BETO, Director, Texas Department of Corrections, Respondent-Appellant.**

No. 72–2896.

United States Court of Appeals,
Fifth Circuit.

Feb. 28, 1973.

Rehearing Denied April 2, 1973.

Rehearing and Rehearing En Banc
Denied April 23, 1973.

Crawford Martin, Atty. Gen., Roland Daniel Green, III, Gilbert J. Pena, Asst. Attys. Gen., Austin, Tex., for respondent-appellant.

Phoebe Lester, Houston, Tex. (Court appointed), for petitioner-appellee.

Before ALDRICH *, SIMPSON and CLARK, Circuit Judges.

---

* Hon. Bailey Aldrich, Senior Circuit Judge of the First Circuit, sitting by designation.

1. The instant case was tried shortly after *Brooks* but before *Hernandez*. In view

CLARK, Circuit Judge:

The Director of the Texas Department of Corrections appeals from a judgment granting habeas corpus relief to an inmate. As the district court correctly recognized, our holdings in Brooks v. Texas, 381 F.2d 619 (5th Cir. 1967) and Hernandez v. Beto, 443 F.2d 634 (5th Cir. 1971), fixed the applicable law.[1] Its judgment was based upon a determination that the constitutional error of trying the petitioner in jail garb was not harmless beyond a reasonable doubt. However, *Hernandez* requires that this court independently review the Texas trial court record, and that perusal leads us to a different conclusion as to the probable impact on the minds of the jury of the petitioner's proscribed prison garb appearance—we conclude it was harmless beyond a reasonable doubt. We therefore reverse.

As the opinion on rehearing in *Hernandez* emphasized, each case must be considered in its own factual context. 443 F.2d at 637. The procedure for such consideration by this court is also defined in that case in these terms:

"Our judgment must be based on our own reading of the record and on what seems to us to have been the probable impact of * * * [the prison garb worn by the defendant] on the minds of an average jury." Harrington v. California, 1969, 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284. Before "a federal constitutional error can be held harmless the court must be able to declare a belief that it was harmless beyond a reasonable doubt." Chapman v. California, 1967, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705; cf. United States v. Manning, 5 Cir. 1971, 440 F.2d 1105; Simpson v. Wainwright, 5 Cir. 1971, 439 F.2d 948.

443 F.2d at 637.

The crime for which Thomas was tried was the robbery of a grocery store. The

of the conclusion reached, we pretermit any consideration of the retroactivity of either of these decisions.

prosecution produced the following testimonial evidence. Mrs. Estelle Vaughn was employed as a checker-stocker and cashier at the store. After making a positive identification of the defendant, she stated that he watched the operation of the cash registers at the store for approximately thirty minutes, then walked up to the vacant cash register in the checking line next to her own. While a cigarette stand located between her position and that cash register prevented Mrs. Vaughn from physically seeing the defendant manipulate the buttons necessary to open the cash drawer, she did see the cash drawer when it came open and she saw Thomas take money out of the drawer with both hands then audaciously step back into her line with the stolen money still visible in his fist and ask for a package of cigarettes. Recovering from her stunned disbelief, Mrs. Vaughn confronted Thomas by saying, "What is that you have in your hand?" and almost simultaneously turning to the store owner and saying, "Mr. Eddy, he got some money out of that cash register."

Mr. Robert Burchfield was working as a checker-stocker in the same store on this occasion. Upon hearing Mrs. Vaughn's statement that a person had taken something out of a cash register, he looked in her direction and saw Thomas, whom he too positively recognized and identified, running away from Mrs. Vaughn and out the door. Burchfield, joined by others, gave chase. Approximately three or four blocks from the store Burchfield caught Thomas, who fell to the ground beside an automobile but immediately got back to his feet. Mr. Eddy Rosenzweig, the store owner, was present in the immediate vicinity of Mrs. Vaughn at the time of the theft. He also joined in the pursuit and observed the capture of Thomas by Burchfield and others. He then retraced the route along which Thomas had fled, looking for the stolen funds. He found the missing 160 dollars in cash, plus four or five checks, under the car next to which Thomas fell at the point of his capture.

Mr. A. C. Campbell, a Harris County Deputy Sheriff, happened to be alighting from his automobile in front of the grocery store as Thomas ran out the door. One of the grocery's sacker boys hollered, "Get him, Mr. Campbell. He got our money." Whereupon Campbell joined the tail and arrived at the point of capture in time to hear Thomas shout, "Let me go. You have got the money. Let me go." Campbell then placed Thomas under arrest.

Although Thomas' counsel engaged in vigorous cross-examination of each of these witnesses, none of them waivered on any detail of the above recited testimony. Thomas' only remaining defense was an asserted variance between the indictment and the proof. The indictment charged that the funds taken were the corporeal personal property of Mrs. Vaughn. Thomas contended that Mrs. Vaughn had not been shown to be in charge of the cash register and therefore the person shown to have been the victim of the theft was the owner of the store. He also advanced the further facile assertion that there was no showing that the money had been taken without the consent of Mrs. Vaughn or the true owner. The State's proof did demonstrate that it was Mrs. Vaughn's responsibility to watch the adjacent register when the checker assigned to that register was not on duty, as was the case here, and the intimation that proof of consent to pilferage had to be shown borders on the incredible. But even if the court had erroneously refused to honor these defenses, a matter we do not have to decide, such error would not reach constitutional dimensions in this case.

Because the same judge who was reversed in *Hernandez* for refusing relief to that petitioner is now reversed here for granting Thomas' application, we deem a brief factual reconciliation of these holdings no less than appropriate. In *Hernandez* the petitioner had been convicted of a felony manslaughter offense of having killed a 12 year old boy while driving an automobile in an intoxicated condition. Seven witnesses testi-

fied that they observed physical aspects of Hernandez' condition after the accident which were consistent with drunkenness, *i. e.*, the smell of alcohol, a staggering walk, and "blurred and misty" eyes. However the proof also demonstrated that Hernandez had been injured in the fatal accident, hence a jury *could* have believed the injury, not intoxication, caused the observed symptoms other than odor. Given this bare possibility, this court was unable to conclude that the error of infringing the presumption of innocence by trial in jail clothing carried no seed of reasonable doubt as to harm. In Thomas' case on the other hand, we can perceive no possible inference which clouds or conflicts any essential or material fact. Rather, all such facts lead unerringly to guilt. Thus, our judgment of the probable impact of the prison garb trial on the minds of an average jury differs in the present case.

The judgment granting the writ of habeas corpus is reversed and the cause is remanded with directions to deny all relief sought.

Reversed and remanded.