**Jerry Lee BATES, Petitioner,**

v.

**W. J. ESTELLE, Jr., Director, Texas Department of Corrections, Respondent.**

**Civ. A. No. 73–H–464.**

United States District Court,
S. D. Texas,
Houston Division.

July 10, 1973.

---

Ray J. McQuary, Staff Counsel for Inmates, Darrington Unit, Rosharon, Tex., for petitioner.

E. Bruce Curry, Asst. Atty. Gen., State of Texas, Austin, Tex., for respondent.

## MEMORANDUM AND ORDER

NOEL, District Judge.

Petitioner, a state prisoner, stands convicted of the offense of robbery by assault. The State alleged two prior convictions for the purpose of enhancing punishment. He was sentenced to life in prison. His conviction was affirmed on direct appeal. Bates v. State, 456 S. W.2d 107 (Tex.Crim.App.1970). In his application for state habeas corpus relief, the petitioner alleged that he was denied due process because: (1) he was tried in jail clothing without his consent, and (2) that his court-appointed counsel was ineffective in the trial and on appeal. Now, in this application for federal relief, petitioner contends only that his trial did not comport with due process in that he was brought to trial in prison clothes without his consent. The defendant moves the Court to either dismiss or deny the petition.

■ It is now axiomatic that it is inherently unfair to try a defendant for a crime while garbed in his jail uniform. Brooks v. Texas, 381 F.2d 619 (5th Cir. 1967). To do so infringes upon a fundamental right—the presumption of innocence. Hernandez v. Beto, 443 F.2d 634, 637 (5th Cir. 1971). However, as the opinion on rehearing in *Hernandez* emphasizes, ". . . each case must be considered in its own factual context." Hernandez v. Beto, supra at 637. The procedure for such consideration is outlined in these terms:

> Our judgment must be based *on our own reading of the record* and on what seems to us to have been the probable impact of . . . [the prison garb worn by the defendant] on the minds of an average jury. Harrington v. California, (1969) 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L. Ed.2d 284. Before 'a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.' Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). (Emphasis added.)

Hernandez v. Beto, supra, 443 F.2d at 637.

Thus, *Hernandez* requires this Court to independently review the Texas trial court record and reach a determination as to the probable impact, if any, on the minds of the jury of petitioner's prison garb appearance. Essentially the trial court record consists of the following facts:

On April 1, 1967, Kenneth Alexander and Bryon Briggs were employed at a

Texaco service station located on the Eastex Freeway in Houston, Texas. Alexander testified that about 2:30 in the morning, while cleaning the grease rack, he observed the petitioner, Bates, and a companion standing a few feet away drinking a bottle of soda.

Approximately 15 minutes later, Bates approached Alexander asking him to "step into the office." When Alexander inquired as to his purpose, Bates produced a gun and escorted him (Alexander) into the office followed closely by petitioner's companion. Briggs was apparently inside the office at this time. Upon entering the room, Bates ordered Alexander to open the cash register, whereupon Bates removed its contents, handing them to his companion who was standing nearby. Both men then left the premises. Alexander indicated that the area was well-lighted and was positive in his identification of Bates as one of the hijackers.

Alexander stated that several days after the robbery, he observed Bates walking past the station, that he followed him in his automobile for some distance, to be sure of his identification and was satisfied he had made no mistake. Apparently, within several hours of this incident, Alexander once again observed Bates walking past the station. This time, Alexander and one Lucius Henry (brother of the gas station owner) followed Bates in an automobile, passing him several times so to enable Alexander to observe him closely again. When satisfied that he had made no mistake as to identification, Alexander and Henry stopped Bates, at which time Henry asked Bates, "Why did you rob us the other night?" The petitioner responded, as he pointed in the direction of the station that had been robbed, "Are you talking about this station over there? I don't even know where it is." When Henry asked Bates to return to the station with them for further questioning, he ran off. Approximately ten minutes later, Bates came into the sta-

tion, and in the presence of Alexander and several other persons stated, "I robbed your station and you all can call the police if you want to."

Alexander also stated that a couple of weeks prior to the robbery, petitioner came into the station for assistance in the repair of his automobile tires.

Bryon Briggs testified that he was working at the station with Alexander and that he first observed the petitioner when he requested change for the soda machine. A short time later, while in the office, Bates entered the room with Alexander and at gun-point instructed Alexander to open the cash register. Bates then removed its contents handing them to his companion. Both hijackers then left the station. Briggs was positive in his identification of the petitioner as one of the robbers. He also recalled the incident several weeks earlier when the petitioner came into the station seeking assistance from Alexander with his automobile tires. Briggs again identified Bates on the occasion he appeared at the station and confessed to several witnesses that he had in fact committed the crime of which he now stands convicted.

The State offered the testimony of one James Garrett who stated that on the evening in question he observed Bates and another individual sitting on a sidewalk curb about a block from and on the same side of the street as the gas station that was robbed. He recalled walking about three blocks past the station and returning for the purpose of visiting a friend at this particular station, who was apparently Alexander. As Garrett stood on the sidewalk directly across the street from the station, he observed the petitioner, his companion, Alexander and Briggs in the station office. He watched as one of the hijackers stood in front of the cash register while the other stood near the door leading into the grease rack area. A few moments later, the petitioner and his companion walked out of the station and took off running

down the street. Garrett was also conclusive in his identification of the petitioner as one of the robbers.

The defense provided by petitioner was that of alibi. Petitioner's mother testified that Bates had come home earlier that evening complaining of a toothache and remained there all night. The petitioner's brother testified that he had brought his brother home from work on the evening in question because of a toothache and that his brother never left the house at anytime that evening. He also recalled accompanying the petitioner to the gas station the day that Alexander and Henry accused him of robbing the station. The jury, quite naturally, chose to reject this tenuous defense and unanimously voted to convict.

After a painstaking and tedious review of the entire trial court record, the facts of this case unquestionably lead to the conclusion that the probable impact on the jury of trying the petitioner in jail clothing was harmless beyond a reasonable doubt. Thomas v. Beto, 474 F.2d 981 (5th Cir. 1973). In *Thomas*, a suspect was tried for robbery of a grocery store. While the robbery was in progress, several persons in the immediate vicinity positively identified Thomas as the thief. The Fifth Circuit Court of Appeals held that all the material facts lead unerringly to guilt and the mere fact that Thomas was tried in prisoner's raiment was harmless beyond a reasonable doubt. Similarly, in the instant case, any impact petitioner's appearance in jail attire had upon the jury was negatived by the overwhelming evidence of petitioner's wilful commission of the crime. On direct appeal of his state conviction, the Texas Court of Criminal Appeals stated in its opinion that the evidence of guilt was overwhelming and concluded that any appeal was "wholly frivolous." This same determination had been reached earlier by petitioner's court-appointed counsel, when he conceded that a close examination of the record revealed absolutely nothing that would arguably support an appeal. The essential facts leading to conviction were clarion clear and the evidence overpowering as to petitioner's culpability. Thus, the Court concludes that there was no infringement upon petitioner's presumption of innocence by having been tried in jail apparel and therefore that respondent's motion to dismiss must be granted.

Now, therefore, it is ordered, adjudged and decreed that respondent's Motion to Dismiss be and the same hereby is granted in all respects.