Harry Lee **WILLIAMS**, Petitioner,

v.

Dr. George J. **BETO**, Director, Texas Department of Corrections, Respondent.

Civ. A. No. 72–H–432.

United States District Court,
S. D. Texas,
Houston Division.

Oct. 2, 1973.

Ben L. Aderholt, Houston, Tex., for petitioner.

John L. Hill, Atty. Gen. of Texas, Joe B. Dibrell, E. Bruce Curry, Asst. Attys. Gen., Austin, Tex., for respondent.

## MEMORANDUM AND OPINION

CARL O. BUE, Jr., District Judge.

This petition for a writ of habeas corpus is one of two applications before this Court based upon the same legal issue: the effect of a trial in jail clothing upon a conviction. Consecutive evidentiary hearings were held in this and in a companion case, Dennison v. Beto, Civil Action No. 70–H–702. Both petitions stem from criminal trials conducted in Harris County, Texas, and involve consideration of the alleged local practice of trying certain defendants in jail clothing.

### The Factual Background

Petitioner Williams was tried in the 177th District Court of Harris County, Texas, in November, 1970, for assault to murder in connection with a knifing incident in which he inflicted severe wounds on his ex-landlord. The petitioner was convicted by a jury of assault to murder with malice; he was sentenced to ten years by the Honorable Miron A. Love, confinement to be not less than two years nor more than ten. The conviction was affirmed in a written opinion on appeal. Williams v. State, 477 S.W.2d 24 (Tex.Cr.App.1972). The specific issues before this Court, ineffective assistance of counsel at the state trial and trial in jail clothes, were decided adversely to petitioner on direct

appeal. For reasons outlined hereafter, it is important to comprehend the gravity of the circumstances surrounding the offense as extracted primarily from the transcript of the state trial.

On May 29, 1970, a fight took place between the petitioner and one Ray Neatherlin, the landlord of an apartment complex on East 7th Street in Houston, Texas. The petitioner had previously been a resident of this complex and had been asked to move out as a consequence of some unspecified difficulty. (Transcript at 142). At the time of the incident at issue, the landlord was 58 years old (Tr. 129) and weighed approximately 200 to 215 pounds (Tr. 125). The petitioner was approximately 64 years of age (Tr. 237) and was characterized by defense counsel as being of "frail body" (Tr. 17). A witness to the incident stated that the landlord was larger, more robust and physically stronger than the petitioner (Tr. 194). The landlord was not called as a witness before this Court at the petitioner's evidentiary hearing, but both men were present before the jury at the state trial.

The petitioner had gone to the apartment complex to visit a Mrs. Kay Tolley who was a witness to the fight. She did not testify at the trial, as she had moved out of state. Neighbors and subsequent trial witnesses were sitting outside of their apartments nearby, and they advised the petitioner that Mrs. Tolley was at the landlord's apartment. The petitioner awaited her return with the neighbors. The landlord testified that Mrs. Tolley was at his apartment to pay her rent and that she had told him the petitioner had returned to cause trouble (Tr. 200). The landlord promptly left his apartment to speak to the petitioner and also to inquire about certain allegedly bad checks used by petitioner to pay his rent while still living there (Tr. 113–14).

As the landlord left his apartment, he called to a neighbor, Bill Stacy, to accompany him (Tr. 133). The tone in the landlord's voice was evidently such that Stacy, expecting trouble, grabbed his pistol and stuck it in the back of his trousers as he hurried to accompany the landlord (Tr. 140–41). Mrs. Tolley and the two men reached the petitioner at about the same time (Tr. 170), Stacy testifying that he was only about a step behind the landlord (Tr. 149). The petitioner was described as appearing nervous upon seeing the landlord, and he put his hand into his right pocket and fumbled around a bit (Tr. 170–71, 185). He stepped forward to meet the landlord, his hand reportedly "cupped" (Tr. 171). The landlord characterized the petitioner's attitude as being belligerent (Tr. 117).

Words were exchanged over the checks with the petitioner denying that he owed anything (Tr. 115–16). The landlord then asked petitioner to leave (Tr. 116). Stacy testified that he quickly realized that a man-to-man confrontation was about to take place, so he assumed the role of ensuring that no one else interfered (Tr. 149, 152). The fight began when the petitioner jumped or first moved toward the landlord, striking or pushing at his neck (Tr. 117, 143, 172, 186) and continued for several minutes (Tr. 150, 174, 189) with considerable pushing, scuffling and hitting taking place (Tr. 150, 177, 190). Although the petitioner was apparently knocked down by the landlord several times, he only received a few marks and scratches (Tr. 161) and exhibited no signs of facial swelling according to the arresting police officer (Tr. 195–99). The petitioner repeatedly got up and hit the landlord (Tr. 176, 179). The landlord stated that the petitioner repeatedly tried to get in close and clinch with him (Tr. 92); Stacy stated much the same thing (Tr. 144). Only after the fight had continued for a period of time did Stacy realize that the petitioner had a knife. Stacy then pulled his gun on the petitioner, yelled a warning to the landlord (Tr. 146) and stopped the fight. At the trial witnesses testified the petitioner had been fighting with his hand cupped (Tr. 171, 186), and Stacy characterized the

petitioner as appearing to be an experienced knife fighter (Tr. 144–45).

The landlord was badly cut. His testimony (Tr. 117, 119–22, 132) and that of Stacy (Tr. 146) indicate that the landlord had been cut in the throat, stabbed in the chest, cut three times over the heart and once in the stomach causing his intestines to hang out. He was taken to a hospital where he received a total of 58 stitches, his condition being listed as "critical" (Tr. 120).

### The Evidentiary Hearing

At the habeas corpus evidentiary hearing held in this Court, counsel for petitioner offered evidence in affidavit form from the Clerk of the 177th District Court that during the months of October and November, 1970, there were a total of six "jail cases", i. e., defendants not released on bond, tried before juries in Judge Miron A. Love's court of which petitioner's case was one. Counsel for petitioner also introduced depositions upon written questions taken in compliance with Fed.R.Civ.P. 31 wherein counsel for each of the five remaining "jail cases" testified that to the best of their knowledge their clients had been tried in jail clothes.

Counsel for respondent introduced several exhibits, including an affidavit from the Honorable Miron A. Love which in pertinent part recited:

I have been asked about my policy in regard to defendants who were tried in jail clothing. I can state unequivocally that if at any time a defendant or his attorney made known to me either before or during the trial that he did not wish to be tried in jail clothing, I would have granted his request, and permitted him time to obtain civilian clothing to wear at his trial.

. . . on numerous occasions I have granted requests by defendants or their attorneys for them to be allowed to obtain civilian clothes to wear at their trials. I have never compelled a defendant to go to trial in jail clothes, and on every occasion when a defendant or his attorney requested that he be allowed to wear civilian clothes at his trial I have granted the request.

Recognition of this policy was acknowledged by James Skelton, the district attorney who prosecuted petitioner at his state trial and who was a witness at this Court's evidentiary hearing. To the same effect was an affidavit obtained from one of the defense attorneys questioned by petitioner's counsel which was introduced into evidence.

Mr. Chester Darnell, defense counsel for petitioner at the state trial, testified at the evidentiary hearing that to his knowledge and belief all non-bailed defendants were tried in jail garb at that time. He testified that he never raised an objection to trial in jail clothes because a similar objection had been denied by the Honorable Wendell Odom, then a state district judge in Harris County, and counsel felt that such an objection before Judge Love would be denied as well. Counsel was unaware of Judge Love's practice as set forth above. The petitioner testified before this Court that he explicitly asked one Captain Cleveland, a Deputy Sheriff, to permit him to change clothes before his state trial, but the request was denied. He did not thereafter raise the issue with attorney Darnell or before Judge Love.

Attorney Darnell's general trial strategy in the state trial had been to try to raise the issue of self defense, but he had been unsuccessful because the petitioner would not take the stand. Darnell had conferred with the petitioner on several occasions prior to trial and had reviewed the case and evidence with the prosecutor. He had apprised the petitioner of the difficulties in the case and the progress of the trial, but the petitioner had continued to refuse to testify.

Former District Attorney Skelton testified at the evidentiary hearing that, as an experienced criminal lawyer, he would have kept the petitioner off the stand. He characterized the evidence in

the case against the petitioner as highly favorable for the prosecution. He also testified that following the state trial he had ascertained that the jury was affected primarily by three factors: (1) the severity of the injuries inflicted upon the landlord; (2) the fact that the petitioner had wielded the knife like an experienced knife fighter; and (3) the fact that the victim was the landlord seeking to remove the petitioner from his own premises.

### The Legal Issues

#### Ineffective Assistance of Counsel

■ While the issue of ineffective assistance of counsel is present in this case, it is not relied upon heavily by petitioner. Nor should it be. This Court has reviewed the record in its entirety, and it is apparent that defense counsel in the state criminal trial rendered reasonably effective legal representation. Any reliance upon studied hindsight to discern possible alternatives in trial strategy can only be viewed as counter productive, particularly in the light of the assessment of the case rendered by the district attorney handling the prosecution. This Court is persuaded that there was no ineffective assistance of counsel.

#### The Effect of Petitioner's Trial in Jail Clothes on the Presumption of Innocence

This issue is not so readily resolved. Indeed, the effect on a defendant's presumption of innocence when tried in jail or prison clothes does not appear to have been extensively litigated in the state courts outside of Texas. *See, e. g.,* 21 Am.Jur.2d Criminal Law § 239 (1965). A thorough review of federal cases suggests that the issue has been considered only occasionally outside of the Fifth Circuit in general and the federal district courts in Texas in particular. *See, e. g.,* Watt v. Page, 452 F.2d 1174 (10th Cir. 1972), cert. denied, 405 U.S. 1070, 92 S.Ct. 1520, 31 L.Ed.2d 803; Moye v. State of Georgia, 330 F.Supp. 290 (N.

D.Ga.1971); Hall v. Cox, 324 F.Supp. 786 (W.D.Va.1971); McFalls v. Peyton, 270 F.Supp. 577 (W.D.Va.1967), aff'd, 401 F.2d 890 (4th Cir.); United States v. Social Service Dept., 263 F.Supp. 971 (E.D.Pa.1967).

#### The Fifth Circuit Cases

To date the Fifth Circuit Court of Appeals appears to have considered this issue in one form or another on eight occasions. In order of release, the opinions are as follows: Brooks v. State, 381 F.2d 619 (5th Cir. 1967); Hernandez v. Beto, 443 F.2d 634 (5th Cir. 1971), cert. denied, 404 U.S. 897, 92 S.Ct. 201, 30 L. Ed.2d 174; Garcia v. Beto, 452 F.2d 655 (5th Cir. 1972); United States v. Fideler, 457 F.2d 921 (5th Cir. 1972); Goodspeed v. Beto, 460 F.2d 398 (5th Cir. 1972); Hollins v. Beto, 467 F.2d 951 (5th Cir. 1972); United States ex rel. Stahl v. Henderson, 472 F.2d 556 (5th Cir. 1973); Thomas v. Beto, 474 F.2d 981 (5th Cir. 1973).

■ In this Circuit it has been held that it is inherently unfair to try a criminal defendant who is dressed in jail or prison clothing, as such action infringes upon the fundamental right of the presumption of innocence. Hernandez v. Beto, *supra,* 443 F.2d at 636–637; Brooks v. State, *supra,* 381 F.2d at 624. It is the trial in such clothing before a jury which is improper, since the possibility exists that such attire subtly and subconsciously can influence their deliberations. As the Court in *Brooks* emphasized:

> No insinuations, indications or implications suggesting guilt should be displayed before the jury, other than admissible evidence and permissible argument.

381 F.2d at 624. Along the same lines a Pennsylvania district court has stated that:

> . . . the critical element appears to be display of the defendant before the jury in a fashion that will allow them to be swayed by his appearance as an already convicted criminal.

United States v. Social Service Dept., 263 F.Supp. 971, 975 (E.D.Pa.1967).

■ It is not the wearing of civilian clothing in which the defendant may have been incarcerated, or the fact that the defendant at his trial was not dressed in coat and tie before the jury as were other trial participants which constitutes possible prejudice. United States v. Fideler, *supra,* 457 F.2d at 922; Moye v. Georgia, *supra,* 330 F. Supp. at 292. Indeed, under some circumstances trial in prison clothing is not inherently prejudicial. For example, when a defendant is on trial for a prison offense against a fellow inmate in an environment where such clothing is the normal attire, there is no prejudice for the jury to see that which is already known. United States ex rel. Stahl, *supra,* 472 F.2d at 557.

■ The fact that a defendant is tried in jail clothing for a non-prison offense does not, standing alone, compel a new trial. Garcia v. Beto, *supra,* 452 F. 2d at 655. If trial counsel intended to use jail clothing as a tactic to gain sympathy with the jury, no reversal is warranted. *Id.* at 656. As the Fifth Circuit Court of Appeals has noted, "[a] defendant may not remain silent and *willingly* go to trial in prison garb and thereafter claim error." Hernandez v. Beto, *supra,* 443 F.2d at 634 (on petition for rehearing) (emphasis added). The reason for this rule has been definitively stated by the Tenth Circuit Court of Appeals:

> In several of the cited cases reference is made to the possibility that the attorney and the defendant there concerned may have wanted the accused tried in jail uniform on some theory that this would be to the advantage of the accused . . . . This matter of possible trial strategy is a factor which should be considered by the trial court . . . because the petitioner, of course, cannot deliberately create a condition for an expected advantage and, failing that, urge it as error. A deliberate purpose

to be so tried may be found from the failure to object to trial in jail clothing unless the trial court is persuaded that the lack of objection resulted from circumstances that unfairly caused the defendant to forego an objection or to request to be tried in other clothing. These must be circumstances which were not a part of trial strategy.

Watt v. Page, 452 F.2d 1174, 1176–1177 (10th Cir. 1972), cert. denied, 405 U.S. 1070, 92 S.Ct. 1520, 31 L.Ed.2d 803. However, the mere fact that no objection was raised does not compel, or permit, termination of judicial inquiry into the claimed harm. In both *Brooks* and *Hernandez,* for example, no objections were made by counsel. In the absence of a showing in the record of express waiver or a showing that trial counsel "willingly" intended to extract some tactical benefit by having the defendant tried in jail clothes, there must be a judicial determination as to whether or not there was a voluntary waiver of the right, even if the defendant failed to object. Hollins v. Beto, *supra,* 467 F.2d at 952; Goodspeed v. Beto, *supra,* 460 F.2d at 400.

■ A judicial determination must be based on a reading of the record and on what seems to have been the probable impact of the prison clothing upon the minds of an average jury. Before a constitutional error can be held to be harmless, the court must be able to conclude that such error was harmless beyond a reasonable doubt. Hernandez v. Beto, *supra,* 443 F.2d at 637. *See also* Noble v. Beto, 325 F.Supp. 607, 608 (S.D.Tex.1971) ("evidence of guilt . . . is so strong that the error thus committed is harmless."); Bates v. Estelle, 360 F.Supp. 1278, 1281 (S.D.Tex. 1973) ("the probable impact [on the jury] . . . was harmless beyond a reasonable doubt."). If all of the facts lead unerringly to guilt, and no possible inference clouds or conflicts with any essential or material fact, then the error is harmless beyond a reasonable doubt. Thomas v. Beto, *supra,* 474 F.2d at 983.

To paraphrase *Thomas,* if the jury "could have believed" by even a "bare possibility" facts favorable to the defendant that are inconsistent with their verdict, or if the verdict carries a "seed of reasonable doubt as to harm", then it is the duty of the reviewing court to reverse the conviction. *Id.* at 983.

### The Texas Cases

This Court has reviewed as well the published opinions of the Texas courts. In general, these courts appear to be in accord with the basic principle espoused in *Hernandez,* as it has been stated that "every effort should be made to avoid trying an accused while in jail garb." Barber v. State, 477 S.W.2d 868, 869 (Tex.Cr.App.1972); Ring v. State, 450 S.W.2d 85, 88 (Tex.Cr.App.1970). Trial in jail clothes has also been the cause of reversed convictions at the state level. *See, e. g.,* Ex Parte Slaton, 484 S.W.2d 102 (Tex.Cr.App.1972); Ephraim v. State, 471 S.W.2d 798 (Tex.Cr.App. 1971). However, several courts appear to have avoided the issue of prejudice by holding that reference in a trial transcript to the defendant being dressed in a "white suit" or "white coveralls" was insufficient to raise the issue of trial in jail clothes, notwithstanding the allegations of the defendant. *See, e. g.,* Simmons v. State, 480 S.W.2d 633, 634 (Tex.Cr.App. 1972); Pratt v. State, 474 S.W.2d 243, 245 (Tex.Cr.App.1971); Ellis v. State, 468 S.W.2d 406, 408 (Tex. Cr.App.1971). None of the foregoing cases considered whether it was a common practice in the convicting court or jurisdiction at the time to try defendants in jail clothes.

The majority of the reported Texas cases appear to place particular emphasis when denying relief on the failure of the defendant or counsel to make formal objection to a trial in jail clothes. *See, e. g.,* Ex Parte Kelly, 484 S.W.2d 773, 774 (Tex.Cr.App.1972); Simmons v. State, *supra,* 480 S.W.2d at 634; Barber v. State, 477 S.W.2d 868, 870 (Tex.Cr. App.1972); Williams v. State, 477 S.W. 2d 24, 26 (Tex.Cr.App.1972); Wilkinson v. State, 423 S.W.2d 311, 312 (Tex.Cr. App. 1968). In none of these cases does it appear that judicial inquiry was made concerning voluntary waiver by the defendant or his counsel. Such an approach would appear to be insufficient under present federal standards. *See* Hollins v. Beto, 467 F.2d 951, 952 (5th Cir. 1972).

### Retroactivity

With respect to jail clothes cases tried before *Hernandez,* such as the present case before this Court, the retroactive application of this new constitutional doctrine is not clear. On two occasions the Fifth Circuit Court of Appeals has had the opportunity, but has not seen fit to decide the question. *Goodspeed, supra,* 460 F.2d at 400; *Thomas, supra,* 474 F.2d at 981 n. 1. On the other hand, the Texas courts have taken the position that it should be applied retroactively. Ex parte Slaton, 484 S.W.2d 102, 104–105 (Tex.Cr.App.1972); Ephraim v. State, 471 S.W.2d 798 (Tex.Cr.App. 1971).

Three primary criteria generally have been considered by the United States Supreme Court in determining whether to apply a particular rule retroactively. They are: (1) the purpose to be served by the new standard; (2) the extent of the reliance by law enforcement authority upon old standards; and (3) the effect on the administration of justice of a retroactive application of the new standard. *See* Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199, 1203 (1967). *See also,* Annot., 22 L.Ed.2d 821, 825 (1970); Annot., 14 L.Ed.2d 992 (1966). In a recent district court decision the Supreme Court pronouncements concerning retroactivity have been fully analyzed and summarized; this Court will not duplicate this analysis here. Woodall v. Keller, 337 F.Supp. 595, 597–598 (D.Md. 1972), rev'd, 465 F.2d 49 (4th Cir. 1972). As the Supreme Court has stated:

Where the major purpose of new constitutional doctrine is to overcome an

aspect of the criminal trial that *substantially impairs its truth-finding function* and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule has been given complete retroactive effect. Neither good faith reliance by state or federal authorities on prior constitutional law or accepted practice, nor severe impact on the administration of justice has sufficed to require prospective application in these circumstances.

It is quite different where the purpose of the new constitutional standard proscribing the use of certain evidence or a particular mode of trial is not to minimize or avoid arbitrary or unreliable results but to serve other ends. In these situations the new doctrine raises no question about the guilt of defendants convicted in prior trials.

(Footnotes omitted; emphasis added)

Williams v. United States, 401 U.S. 646, 653, 91 S.Ct. 1148, 1152, 28 L.Ed.2d 388, 395 (1971). *See also* Robinson v. Neil, 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973).

■ Considering the first of the three criteria noted above, that is, the purpose to be served by the new standard, it is apparent that a key inquiry in determining retroactivity is the effect which the denial of rights or procedures subsequently ruled to be constitutionally mandated might have on the accuracy of the guilt determining process in prior trials. One court in the Southern District of Texas has already considered this question. In Woodrow Wilson Smith v. Beto, Civil Action 71–H–830, at 5 (S.D.Tex., filed May 24, 1972) the test of *Hernandez* was held to be fully retroactive, it being observed therein that "trial of a defendant in jail clothes penetrates to the very core of due process". Taking into consideration the position of the Texas courts as well as that expressed in *Smith, supra,* it would appear that retroactive application of *Hernandez* serves a valid purpose which satisfies this Supreme Court requirement.

The second factor, reliance upon old standards, is not an issue here, as it does not appear that law enforcement authorities at times material to this particular trial were relying upon any particular standard.

■ The third criterion, the effect of retroactivity upon the administration of justice, is of some concern to this Court and merits exposition. Counsel for the respondent suggest that a retroactive application of the *Hernandez* rule would open the prison gates and precipitate the release of untold numbers of criminals. This Court has taken note of the evidence which clearly indicates that prior to *Hernandez* the majority of defendants who were unable to meet bail in Harris County were, in fact, tried in jail clothes. While the argument can be made that no substantial impairment of the truth finding function of a criminal trial ever resulted from the prosecution of a defendant in jail clothes since that was the generally accepted practice at the time, the fact remains that such a trial is now viewed in this Circuit as inherently unfair and infringing upon the fundamental right of the presumption of innocence. Hernandez v. Beto, *supra,* 443 F.2d at 636–637; Brooks v. State, *supra,* 381 F.2d at 624. However, safeguards against any such potential mass release of prisoners are readily apparent. Each case must be evaluated on its own facts. Hollins v. Beto, 467 F.2d 951, 952 (5th Cir. 1972); *Hernandez, supra.* The fact that a defendant was tried in jail clothes does not per se automatically compel the granting of immediate relief following a habeas corpus hearing such as this one in which the issue is raised. It does require judicial scrutiny to insure that a defendant's criminal trial contains no constitutional deprivations. The possible application of the doctrine of harmless error as evaluated on a case-by-case basis affords ample protection so as to preclude any significant adverse effect upon the ad-

ministration of justice. Last of all, the burden of proof upon a petitioner in a habeas corpus evidentiary hearing remains intact. Swain v. Alabama, 380 U.S. 202, 227, 85 S.Ct. 824, 13 L.Ed.2d 759, 776 (1965); Hairston v. Alabama, 465 F.2d 675, 677 (5th Cir. 1972); Richardson v. Texas, 425 F.2d 1372, 1373 (5th Cir. 1970). Thus, when measured against the totality of the enunciated Supreme Court standards, the rule of *Hernandez* passes muster and should be applied retroactively.

### Conclusion

It is clear from the record in this case and consistent with the evidence adduced in *Dennison*, the companion case, that prior to *Hernandez* there did exist a common practice in Harris County courts to try incarcerated defendants in jail clothing unless they were able to secure some dispensation. The clothing worn varied somewhat, but generally consisted of a white T-shirt with "Jail" or "Harris County Jail" printed on the back, a pair of trousers (white, khaki, or blue jeans) on which the same or similar words were printed in white letters, and, generally, a pair of shower clogs.

 There is no doubt but that the Honorable Miron Love had a practice of allowing defendants to stand trial in civilian clothing, if requested, a practice evidently followed by certain of the other judges as well. *See* Ex Parte Kelly, 484 S.W.2d 773, 774 (Tex.Cr.App.1972). However, the record does not reveal that Judge Love's practice was publicly known or that it was known to defendants or their counsel. More reasonably, at times material to the petitioner's criminal trial it was the standard practice to have all defendants in custody dressed alike without any policy such as that employed by Judge Love being uniformly adopted by all or even a majority of the criminal district judges in Harris County. Instead, the evidence points to the strong likelihood that the trial climate at that time acted as a natural deterrent to the raising of objections to what was commonplace—a trial in jail

clothes, even assuming that defendants or their counsel thought about the problem and considered its legal implications. In the absence of such consideration it can scarcely be concluded that either petitioner in this case or his trial counsel knowingly, willingly and voluntarily waived the right to be tried in civilian clothing. The fact that Williams may have asked a deputy sheriff to be tried in such clothing and, upon denial, thereafter failed to raised the matter with counsel or the court cannot be viewed as constituting a waiver which satisfies the requirements of this Circuit.

 The circumstances surrounding the knifing in this case, all as heretofore set out, are so strong that in this Court's opinion a jury could not have been swayed from a belief of innocence to a finding of guilt because of the defendant's appearance in jail clothes. Whatever harm, if any at all, resulted therefrom was clearly *de minimis* and squarely fits the doctrine of harmless error beyond a reasonable doubt. Thomas v. Beto, 474 F.2d 981 (5th Cir. 1973); Noble v. Beto, 325 F.Supp. 607 (S.D.Tex.1971).

A theoretically closer case might be presented with respect to jury consideration of the lesser included offense. The jury was charged in this case that it might find the defendant guilty of assault with intent to murder with malice or guilty of assault with intent to murder without malice. Conviction of the assault *with* malice carries a possible sentence of 2 to 25 years, whereas the lesser offense of the assault *without* malice carries a possible sentence of 1 to 3 years. Vernon's Ann.Tex. Penal Code art. 1160 (Supp. 1972–73). (The statute also provides for increased sentences for certain assaults when made with knives, but the state record does not indicate that this provision was considered or employed by the judge.) The court charged the jury that the lesser offense involved "sudden passion arising from an adequate cause" so as to "render the mind incapable of cool reflection". Contrary to the present case, if

the material circumstances could arguably support the contention that the petitioner had experienced an adequate cause so as to be compelled to act by a sudden passion rendering his mind incapable of cool reflection, the possibility exists that a defendant could receive a greater sentence from a jury which was swayed between differing offenses by the presence of the defendant in jail clothes. Such a violation of a defendant's presumption of innocence as to the more serious offense would be constitutionally impermissible under existing law. This Court has carefully screened the record in this case and finds no factual basis which can possibly bring the petitioner within range of the lesser included offense. This being so,

It is the opinion of this Court that the trial of the petitioner in jail clothes, although inherently prejudicial, was nevertheless clearly harmless error beyond a reasonable doubt. Petitioner's application for a writ of habeas corpus must be and is hereby denied.