Johnny **HOLLINS**

v.

Dr. George J. **BETO**, Director, Texas Department of Corrections.

Jerry Lewis **WILLIAMS**

v.

Dr. George J. **BETO**, Director, Texas Department of Corrections.

Civ. A. Nos. 71–H–295, 72–H–1056.

United States District Court, S. D. Texas, Houston Division.

April 2, 1974.

Donald B. McFall, Butler, Binion, Rice, Cook & Knapp, Houston, Tex., for plaintiff Hollins.

J. Richard Gilpin, Asst. Atty. Gen., Austin, Tex., for defendant Beto in No. 71–H–295.

Jerry Lewis Williams pro se.

Jack Boone, Asst. Atty. Gen., Austin, Tex., for defendant Beto in No. 72–H–1056.

SINGLETON, District Judge.

*Memorandum Opinion:*

These two opinions will treat petitions for habeas corpus heard by this court in a period of two weeks. The petitioners have in common the allegations that

their convictions were constitutionally infirm because they were tried in jail clothes.

■ In attempting to carve out a rule with which it can work in the jail clothes area, this court has taken many turns. A study of the jail clothes issue as it is addressed by the Fifth Circuit [1] reveals a faint but discernable pattern with regard to the proper procedural inquiry. Although there is at least one exception,[2] the general rule is that it is inherently unfair to try a prisoner in jail clothing because to do so infringes upon the fundamental right of the presumption of innocence. *E. g.* Brooks v. Texas; Hernandez v. Beto.

The threshold question in a jail clothes case is whether the petitioner was in fact presented to the jury in jail clothing.

■ If it be determined that he was, then the next question becomes (assuming it is raised by the respondent) whether the petitioner waived his right not to be tried in jail clothing. With regard to this inquiry, a mere absence in the record of an objection by either petitioner or his attorney does not of itself constitute waiver, although it may suggest it. The question of waiver must be determined under the traditional standard of "an intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), read in connection with the Fifth Circuit's treatment of waiver in the jail clothes context. *Cf.* Hernandez v. Beto, 443 F.2d 634, 637 (5th Cir. 1971). There is one aspect peculiar to the jail clothes situation: a waiver may be deemed where the attorney for petitioner is shown to have used the fact of jail clothing as an intentional trial tactic

to invoke sympathy. Garcia v. Beto, 452 F.2d 655 (5th Cir. 1972); Hollins v. Beto, 467 F.2d 951 (5th Cir. 1972).

■ Once it is determined that the petitioner had been ·presented to the jury in jail clothing and that there was no waiver, it is axiomatic that a fundamental right of due process, the presumption of innocence, has been denied the petitioner. Nevertheless, there remains still one further inquiry. Under the dictates of the Fifth Circuit, the final question must be whether the denial of the fundamental right to a presumption of innocence harmed the petitioner. It is in this last inquiry that the black and white rules fade to grey. The test here is the harmless error test of Chapman v. California, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L.Ed.2d 705 (1967), and Harrington v. California, 395 U.S. 250, 254, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). *Cf.* Hernandez v. Beto, *supra.* As Judge Bue expressed the test in a recent opinion:

> To paraphrase Thomas [v. Beto, 474 F.2d 981 (5th Cir. 1973)] if the jury "could have believed" by even a "bare possibility" facts favorable to the defendant that are inconsistent with their verdict, or if the verdict carries a "seed of reasonable doubt as to harm", then it is the duty of the reviewing court to reverse the conviction.

Williams v. Beto, 364 F.Supp. 335 (S.D. Tex.1973).

C. A. 71–H–295—JOHNNY HOLLINS

On March 31, 1972, Johnny Hollins' petition for habeas corpus was granted. The state appealed and the Fifth Circuit held that we were in error in granting the petition without first ascertaining at a hearing whether Hollins' failure to ob-

1. Brooks v. Texas, 381 F.2d 619 (5th Cir. 1967) ; Hernandez v. Beto, 443 F.2d 634 (5th Cir. 1971) ; Garcia v. Beto, 452 F.2d 655 (1972) ; United States v. Fideler, 457 F.2d 921 (1972) ; Hollins v. Beto, 467 F.2d 951 (1972) ; United States ex rel. Stahl v. Henderson, 472 F.2d 556 (1973) ; Thomas v. Beto, 474 F.2d 981 (5th Cir. 1973).

2. When a defendant is on trial for a prison offense against a fellow inmate in an environment where such clothing is the normal attire, there is no prejudice for the jury to see that which is already known. United States ex rel. Stahl v. Henderson, *supra.*

ject at trial was a voluntary waiver of his rights. Hollins v. Beto, 467 F.2d 951 (5th Cir. 1972). Petitioner Hollins was convicted by a jury of theft over the value of $50 (he allegedly stole an automobile) and his punishment was enhanced to life imprisonment by virtue of the fact that he had twice before been convicted of a felony. See Article 63, Vernon's Ann.P.C. (1952).

On July 30, 1973, a hearing was set to determine the issue of failure to object to the wearing of jail clothes at trial. At docket call the state appeared and agreed to stipulate to the fact that there was no voluntary waiver of the objection. However, the state did object at that time to the retroactive application of Brooks v. Texas [decided July 10, 1967] and Hernandez v. Beto [decided April 15, 1971, reh. denied May 12, 1971]. Hollins was tried May 16, 1966, before either case was decided. The Fifth Circuit has expressly reserved this question for a later determination in Goodspeed v. Beto, 460 F.2d 398 (5th Cir. 1972). See also Thomas v. Beto, 474 F.2d 981, note 1 (5th Cir. 1973).

█ While it might be contended that the state has waived this argument since it presents it for the first time here, it is not necessary to decide this question because we hold that the jail clothes decisions should be applied retroactively. As Judge Seals so ably put it in a recent opinion:

> This Court is convinced that trial of a Defendant in jail clothes penetrates to the very core of due process. The Court of Appeals has characterized it as "inherent unfairness." Hernandez v. Beto, supra, at 637. That "probable impact on the jury" which initially motivated the Court to announce the *Hernandez* rule presents the same kind of threat to the principle of fundamental fairness that prompted the Supreme Court to retroactively apply the rulings of *Jackson, Bruton* and

*Witherspoon.*[3] As a result, Hernandez must also be accorded retroactive application.

Smith v. Beto (S.D.Tex.1972) [Civil Action No. 71–H–830, May 24, 1972].

Judge Bue has since filed an exhaustive opinion which also holds the jail clothes issue one which should have retroactive application. Williams v. Beto, *supra.*

The sole remaining question is one which has already been decided but which was not explained in detail in the original opinion entered March 31, 1972. That question is whether or not the wearing of jail clothes at trial was harmless error beyond a reasonable doubt.

█ In this case, there is a very real question of identity. Hollins allegedly stole a car. The stolen car was found after its driver smashed it up a short distance from the place its owner left it. There were several persons around the accident site; they all saw a man fitting the defendant's description get out of the car and walk away. As he was walking away, the police arrived on the scene. No one had him in continuous view as he rounded a corner. The police pursued him but had him out of sight for several minutes. They returned to the scene of the accident with the defendant who claimed through the whole incident that he was not the man. His only distinguishing characteristics were: (1) he was black; (2) he had a moustache; and (3) he did not have on a business suit.

The jury seemed to be concerned with this matter because during the deliberation they asked, in a note to the judge, "Did the arresting officer identify the defendant as the man he saw leaving the scene of the accident?" The judge interpreted this as a request to have the officer's testimony read and that was done.

---

3. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1963); Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); Witherspoon v. Illinois, 391 U.S. 510, 523, n. 22, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).

Given this state of affairs, we found then and now find again that the wearing of jail clothes was not harmless error beyond a reasonable doubt.

As before, we find it unnecessary to consider the myriad other points which Hollins raises in his petition for writ of habeas corpus.

It is, therefore, ordered, adjudged, and decreed that petitioner's writ of habeas corpus be, and the same is hereby, granted.

Further, the state is ordered to retry petitioner in the case in question which was in Criminal, District Court No. 2 of Harris County, Texas, styled State of Texas v. Johnny Hollins, Cause No. 118092, within ninety (90) days or to dismiss the case and release the petitioner. The state will inform the court of the decision made.

### C.A. 72–H–1056—JERRY LEWIS WILLIAMS

Petitioner was indicted for robbery by assault as a second offender on July 9, 1969. He pleaded not guilty and was tried by a jury and convicted on November 18, 1969. He was given life imprisonment.

The question presented to the court was previously presented to the convicting court and to the Court of Criminal Appeals. Both were denied without written order May 30, 1972, and June 30, 1972, respectively.

■ Williams asserts that the presumption of his innocence was infringed upon when he was forced to be tried in jail clothes. His own testimony and that of his aunt and uncle reveal that he objected to the bailiff about not being able to wear the street clothes his aunt had left at the jail. He testified that he did not protest before trial because he had been informed that he was not going to trial and when he was taken into the courtroom it was too late.

His attorney testified that at the time many prisoners were tried in jail clothing; he did not feel it necessary to object, since he did not think it would make any difference; and that while he had not consciously let Williams go to trial in jail clothes, he attempted to utilize the fact to gain jury sympathy. From this we hold:

(1) Williams was tried in jail clothes.

(2) There were civilian clothes available.

(3) Williams himself did object, although it seems to the wrong persons and he cannot be said to have waived his rights although his lawyer's actions might well be taken as a waiver. *Cf.* Hernandez v. Beto, 443 F.2d 634, 637 (5th Cir. 1971).

(4) His lawyer cannot be said to have employed the jail clothes as a tactic even though he obviously tried to make the best of the situation.

We do find, however, that Williams' jail clothes constituted harmless error beyond a reasonable doubt.

The guilt or innocence phase of the trial was expressly excluded from the record when the case was directly appealed to the Court of Criminal Appeals. At the time, the significant part of the case was seen to be the part in which the state sought to enhance the sentence and the defense questioned what it felt were irregularities in the enhancement phase. The defendant contended that in the trials leading to the prior convictions he had not had a lawyer. The record on guilt or innocence has now been destroyed by the court reporter and the court has relied on the testimony of both the then Harris County prosecutor and Williams' defense attorney to ascertain what evidence there was against Williams.

His lawyer testified that in preparing for the case he counseled with the defendant, discussed the case with eyewitnesses and read the files of the District Attorney. He came to the conclusion that all evidence pointed overwhelmingly to his client's guilt. He turned down the state's offer of a plea bargain and tried the case in order to preserve the enhancement aspect.

The crime was the robbery of a grocery store. There were two eyewitnesses. The complaining witness testified that Williams jumped over the counter to rob the cash register and was shot before he got any money. The attorney testified that the defendant was shot either by the police or by someone in the store. When the defendant was arrested, he was slumped by the cash register, a gun in his hand. The defense attorney testified that he put on no witnesses and that he felt it would have been unwise to put Williams himself on the stand.

The prosecutor testified that although the facts were hazy he did remember that Williams was shot in the act of robbing a grocery store by the victim of the robbery. His recollection was that the case was tried solely for the enhancement aspect and that the state's evidence of guilt was overwhelming.

After his defense lawyer testified, Williams was allowed, in the interest of judicial economy, to amend his petition to include an allegation of incompetency of counsel. Williams then testified that what was called a robbery was really just a shooting. He said the alleged robbery victim was really just a man with whom he was having a fight, that no money was found on him, and that only one state witness testified Williams' actions constituted a robbery. The other witness characterized the incident as a shooting. Williams stated further that there were witnesses who could have exonerated him and that he wanted to take the stand in his own behalf but that his lawyer prevented it.

The attorney countered with the testimony that there was never any question of exculpatory witnesses raised by Williams, that he had not wanted to take the stand in his own defense, and that the evidence was truly overwhelming.

Since we are unable to review a record on the guilt or innocence aspect of the case, we must rely on the testimony of Williams' defense attorney and the District Attorney who prosecuted Williams. From this testimony we find that any adverse impact on the minds of the jury was swallowed by the overwhelming evidence. We find, beyond a reasonable doubt, that Williams' trial in jail clothes was harmless error.

Having observed the demeanor of Williams' defense attorney, heard his testimony, and reviewed his efforts in that part of the record which we do have, the court cannot say that Williams was deprived of effective counsel at his trial.

It is, therefore, ordered, adjudged, and decreed that Jerry Lewis Williams' application for writ of habeas corpus be, and the same is hereby, denied.