**David Lee McWILLIAMS**

**v.**

**W. J. ESTELLE, Jr., Director, Texas Department of Corrections, and Sidney Lanier, Warden, Ramsey Unit, Texas Department of Corrections.**

**Civ. A. No. 73–H–1166.**

United States District Court,
S. D. Texas,
Houston Division.

July 10, 1974.

Larry W. Sauer, Jr., Houston, Tex., for petitioner.

Jack Boone, Asst. Atty. Gen., Austin, Tex., for respondent.

## MEMORANDUM AND ORDER

SINGLETON, District Judge:

This petition for writ of habeas corpus is brought by a state prisoner pur-

suant to the provisions of 28 U.S.C. § 2254. Petitioner is in custody of the Texas Department of Corrections pursuant to a final conviction for the offense of murder with malice in the 179th District Court of Harris County, Texas, in cause number 145,339. Punishment was assessed by a jury at a term of twenty-five years.

■ No appeal was taken, however, pursuant to the provisions of Article 11.07, Vernon's Ann.C.C.P., petitioner filed a postconviction application for writ of habeas corpus in the state convicting court on February 6, 1973. The district court, without an evidentiary hearing, transmitted the application to the Texas Court of Criminal Appeals. That court denied the application on March 14, 1973, without written order. Since the grounds for relief raised in this court are identical to those raised n the state court, state remedies have been exhausted. O'Neal v. Beto, 428 F.2d 1164 (5th Cir. 1970); Young v. Alabama, 427 F.2d 177 (5th Cir. 1970).

Relying on Brooks v. Texas, 381 F.2d 619 (5th Cir. 1967) petitioner contends that he was denied due process of law and a fair trial in that he was made to stand trial in jail clothing.[1]

That "[i]t is inherently unfair to try a defendant for crime while garbed in his jail uniform"[2] has become a maxim in this circuit.[3]

The court is convinced that the petitioner sustained his threshold burden of proving that he was presented to the jury in jail clothing. Throughout the trial he wore a white uniform with "Harris County Jail" stenciled on it, even though his civilian clothes were in respondent's custody at the Texas Rehabilitation Center. This much was satisfactorily established at the evidentiary hearing conducted by this court.

## WAIVER

Respondent, however, advances two arguments why habeas corpus relief should be denied. First, it is argued that petitioner waived his right to complain in that no objection to the wearing of jail clothes was made to the trial court, and this absence of an objection "may well have been part of petitioner's trial strategy in order to gain the sympathy of the jury."[4]

■ The question of waiver must be determined under the traditional standard of "an intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L. Ed. 1461 (1938) read in connection with the Fifth Circuit's treatment of waiver in the jail clothes context. *Cf.* Hernandez v. Beto, 443 F.2d 634, 637 (5th Cir. 1971). With regard to the question of waiver, petitioner testified that at the time of his trial he did not know that he had a right not to be tried in jail clothing, that as far as he knew all of the prisoners at the Texas Rehabilitation

---

1. Petitioner also contends he was denied a speedy trial. Because of the particular disposition of the jail clothes issue, the speedy trial contention will not be discussed. However, this analytical preference should not be deemed a determination that the speedy trial claim is not serious, especially in light of the recent opinion by Chief Judge Brown in Hoskins v. Wainwright, 485 F.2d 1186 (5th Cir. 1973).

2. Brooks v. Texas, 381 F.2d at 624.

3. Hernandez v. Beto, 443 F.2d 634 (5th Cir. 1971), cert. denied, 404 U.S. 897, 92 S.Ct. 201, 30 L.Ed.2d 174 (1971); Garcia v. Beto, 452 F.2d 655 (5th Cir. 1972); United States v. Fideler, 457 F.2d 921 (5th Cir. 1972);

Goodspeed v. Beto, 460 F.2d 398 (5th Cir. 1972); Hollins v. Beto, 467 F.2d 951 (5th Cir. 1972); United States ex rel. Stahl v. Henderson, 472 F.2d 556 (5th Cir. 1973); Thomas v. Beto, 474 F.2d 981 (5th Cir. 1973); Williams v. Beto, 364 F.Supp. 335 (S.D.Tex.1973); St. Jules v. Beto, 371 F. Supp. 470 (S.D.Tex.1974); Hollins v. Beto (Williams v. Beto), 373 F.Supp. 1246 (S.D. Tex.1974) [No. 71–H–295, No. 72–H–1056, decided jointly April 2, 1974]. But see Xanthull v. Beto, 307 F.Supp. 903 (S.D.Tex. 1970); McFalls v. Peyton, 270 F.Supp. 577 (W.D.Va.1967), aff'd 4th Cir. 1968, 401 F.2d 890, cert. denied, 394 U.S. 951, 89 S.Ct. 1292, 22 L.Ed.2d 486.

4. Respondent's Motion to Dismiss, p. 4.

Center were tried in jail clothing. Of course, if petitioner did not know of the right, he could not have waived it in the traditional manner. However, peculiar to the jail clothes issue, a waiver may be deemed where the attorney for the petitioner is shown to have used the fact of jail clothing as an intentional trial tactic to invoke sympathy—arguably, with or without petitioner's knowledge.[5] See Garcia v. Beto, 452 F.2d 655 (5th Cir. 1972). In line with Hollins v. Beto, 467 F.2d 951 (5th Cir. 1972), an inquiry into this area was made and it was established through the testimony of petitioner's trial counsel that he did not choose as a trial tactic to have petitioner presented to the jury in his jail uniform. The record of the state court proceedings do not suggest to the contrary. It was the trial counsel's opinion that such a demonstration diminishes the credibility of an accused at trial, and in this particular case, where the petitioner was the only defense witness,[6] the trial counsel insisted that he "definitely" did not use jail clothes as a tactic. The attorney explained that he did not object because he was of the opinion that, at that time, the trial judge would have considered the objection frivolous. Under these circumstances, the attorney's failure to object cannot be declared a voluntary waiver by petitioner. Her-

nandez v. Beto, 443 F.2d 634, 637 (5th Cir. 1971).

### HARMLESS ERROR

■ Respondent's second argument is that the jail clothes error was harmless. The test here is the harmless error test of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) and Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). The test as it has been applied in the jail clothes context was expressed this way by Judge Bue in a recent opinion:

> "To paraphrase Thomas [v. Beto, 474 F.2d 981 (5th Cir., 1973)] if the jury 'could have believed' by even a 'bare possibility' facts favorable to the defendant that are inconsistent with their verdict, or if the verdict carries a 'seed of reasonable doubt as to harm,' then it is the duty of the reviewing court to reverse the conviction."

Williams v. Beto, 364 F.Supp. 335, 341 (S.D.Tex.1973).

The indictment, which charged petitioner with murder with malice, grew out of a shooting on August 12, 1969, in a grocery store-bar in downtown Houston. The owner of the store died as the result of several gunshot wounds. The petitioner admitted the shooting but in-

---

5. Compare Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963) where the following language, if analogous here, would require the personal participation of the petitioner in the attorney's decision to waive the right not to stand trial in a jail uniform:

> "If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate by-passing of state procedures, then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his federal claims on the merits—though of course only after the federal court has satisfied itself, by holding a hearing or by some other means,

of the facts bearing upon the applicant's default. [citations omitted] At all events we wish it clearly understood that the standard here put forth depends on the considered choice of the petitioner.[44] [ci-

> "44. To the extent that any decisions of this Court may be read to suggest a standard of discretion in federal habeas corpus proceedings different from what we lay down today, such decisions shall be deemed overruled to the extent of any inconsistency."

tations omitted] A choice made by counsel not participated in by the petitioner does not automatically bar relief. 372 U.S. at 439, 83 S.Ct. at 849.

6. There was another witness that the defense had planned to call, but who for reasons not necessary to go into now became unavailable after a fifteen-month delay between the arrest and trial.

sisted that he shot in self-defense. It was the theory of the prosecution that the store owner refused to serve petitioner, that he became angry, went to his hotel room, returned with a pistol, and shot the owner in cold blood. The petitioner's version is reflected by the following summation by him on cross-examination:

"[the store owner] said, 'you old gray-headed son-of-a-bitch, if you ain't going to buy nothing, get out of here.' And I just joked it off. He throwed the bottle. So, I ducked and ran out next to the door. By that time he had done grabbed another one and started hand springing over the cooler. At that point I was on the street, going out through the door; and he said, 'You gray-headed son-of-a-bitch.' He said, 'I won't miss you,' He said, 'I will take my .38 and kill you.' When I glanced around, he was coming at me with something in his hand. I can't testify whether it was a bottle, I can't testify whether it was a gun. I just did my shirt up and shot him. Whether the first shot killed him, I can't say directly." [7]

Partial corroboration of petitioner's version was the fact that a broken beer bottle was found on the floor near the deceased body and a pistol was found under a towel behind the cash register. Petitioner did not flee from the scene.[8] He sat on the steps of the store and waited for the police to arrive. He told the first officer on the scene that he was "the one that did it." [9] Petitioner's position at trial was that the shooting was justified, being in self-defense, or at least mitigated because without malice,[10] the shooting having occurred under the immediate influence of a sudden passion arising from an adequate cause. A favorable finding by the jury on the issue of self-defense would have resulted in an acquittal. Article 1226, V.A.P.C. A favorable finding on the issue of malice would have limited the punishment to a maximum of five years, Article 1257b, V.A.P.C., and would have made probation a possible alternative. Article 1257a, V.A.P.C.; Article 42.12, § 3a, V.A.C.C.P.

Thus, the case went to the jury narrowed to the single issue whether they believed the petitioner's testimony and to what extent. The credibility or believability of petitioner most certainly was a critical factor in the jury's verdict. The fact that petitioner was dressed in jail clothing could have influenced the jury in their delicate decision to disregard or discredit the petitioner's story. Given this set of circumstances, this court is not prepared to declare beyond reasonable doubt that the error was harmless.

It is, therefore, ordered, adjudged, and decreed that the petition for writ of habeas corpus be, and the same is hereby, granted.

Further, the State is ordered to retry the petitioner in the case in question within ninety (90) days from the date of this Memorandum and Order or to dismiss the case and discharge the prisoner. The State will inform the court of its decision.

7. Statement of Facts, pp. 198–199.

8. Compare Williams v. State, 489 S.W.2d 614 (Tex.Cr.App.1973) where the court quotes from the Old Testament the following: "The wicked flee when no man pursueth: but the righteous are bold as a lion." Proverbs 28:1.

9. Statement of Facts, p. 48.

10. Murder without malice is "a voluntary homicide committed without justification or excuse under the immediate influence of a sudden passion arising from an adequate cause, by which is meant such cause as would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection. . . ." Article 1257c, Vernon's Ann.P.C.