**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Charles Oscar JOHNSON, Defendant-Appellant.**

**No. 72–3794.**

United States Court of Appeals,
Fifth Circuit.

Feb. 7, 1974.

J. W. Dinsmore, Birmingham, Ala., for defendant-appellant.

Ira DeMent, U. S. Atty., D. Broward Segrest, Wade B. Perry, Asst. U. S. Attys., Montgomery, Ala., for plaintiff-appellee.

Before BELL, GOLDBERG and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

We review here Charles Oscar Johnson's conviction under the Dyer Act, Title 18, U.S.C. Sec. 2313, for knowingly and willfully receiving, concealing, and disposing of a stolen motor vehicle which was moving in interstate commerce. We affirm.

### I.  *The Facts*

The appellant, Charles Oscar Johnson, was arrested on the night of March 23rd or 24th, 1972 (the record is unclear as to which of the two days) in Prattville, Alabama in possession of a 1972 Pontiac Grand Prix automobile, Vehicle Identification Number (VIN) 2K57T2A151947. Evidence indicated that the vehicle had been stolen March 16 from the parking lot at an apartment complex in Roswell, Georgia, where the owner of the car, Ms. Louise Raxter, resided.

The occasion for the arrest was the delivery of the car for sale by one Benny Hand, appellant's codefendant, to Kenneth Ray Hill, a deputy Sheriff of Autaga County, Alabama. Hill was posing as a used car dealer under the assumed name "Kenneth Ray." Through prior arrangements, Hand had agreed to supply "Ray" with thirty to forty stolen, late-model, General Motors automobiles a month.[1] The Grand Prix Pontiac was

---

1. During oral argument the evident hearsay nature of this testimony by Hill was called to counsel's attention. The testimony was not objected to at trial and counsel has not attempted to raise this as an issue on appeal. Under the "plain error" standard of review, F.R.Crim.P. 52(b), Smith v. United States, 5 Cir. 1965, 343 F.2d 539, 542, cert. denied, 382 U.S. 861, 86 S.Ct. 122, 15 L.Ed.2d 99, we conclude that the introduction of this

the first and only automobile actually delivered by Hand to "Ray" pursuant to this agreement.

The automobile to be delivered to "Ray" was apparently in Birmingham at a time earlier than the scheduled delivery date. Hand, in search of someone to drive the car from Birmingham to Prattville, contacted the appellant. According to appellant's testimony, Hand offered him $25 to drive the car to Prattville. The appellant was to follow Hand, who would lead the way in his pickup truck.[2]

On the night of March 23rd or 24th, appellant followed Hand, who led in his pickup truck, from Birmingham to a filling station near the end of an interstate highway in Autaga County. There, Hand made a phone call, presumably to "Ray" and shortly thereafter, "Ray" appeared and drove past the filling station and around the barrier at the end of the interstate to a stopping place on the unopened portion of the highway. Appellant testified that upon seeing "Ray's" car pass by, Hand instructed him to get into the Pontiac and follow "Ray", as he was the individual to whom the delivery was to be made. Appellant did as instructed with Hand now following in his pickup, as Johnson crossed into the unopened portion of the highway and stopped behind "Ray's" already parked automobile.

At this point, "Ray" and Hand entered Hand's pickup to consummate the deal. There is conflicting testimony as to whether appellant overheard conversation between "Ray" and Hand indicating that the purchase price for the Pontiac was to be $2,200.[3] Once inside the pickup, "Ray" disclosed his true identity and placed Hand under arrest. Appellant was arrested later the same day by Hill, then accompanied by a special agent of the F.B.I. Examination of the Pontiac disclosed that Alabama license plates had been substituted for the original Georgia plates. In addition, a false VIN (vehicle identification number) had been embossed on a piece of labelling tape and the tape then attached in such a fashion as to conceal the true VIN on the vehicle dashboard. There was testimony by the witnesses for the government that one end of the tape curled upward so as to be clearly visible from the driver's seat.

## II.  *Sufficiency of the Evidence*

Proof of violation of Title 18 U. S.C. Sec. 2313 requires two basic elements: (i) a stolen vehicle moving in or as part of interstate commerce and (ii) possession of the vehicle by the person charged with knowledge that it is stolen and is hence wrongfully in his possession. Appellant seeks reversal of his conviction because of the insufficiency of the government's evidence to prove guilty knowledge on his part of the stolen nature of the Pontiac automobile, admittedly moving in interstate commerce, and admittedly in his possession.

We review the verdict of the jury below taking that view of the evidence most favorable to the government.

---

testimony, relating as it did merely to the existence of a plan between Hand and "Ray", did not rise to the level of error affecting substantial rights of the defendant, and, therefore, requires no additional treatment.

2. During oral argument in this case, Johnson's counsel advised the Court that Hand was unwilling to testify on behalf of the appellant because of the pendency of other charges against Hand. Thus, the only evidence in the record to the events preceding the actual delivery of the stolen automobile is the uncontroverted testimony of Johnson.

Appellant testified that he was at that time out of work and in need of income, and accepted Hand's offer for this reason.

3. Deputy Sheriff Hill testified that such a conversation was held in appellant's presence prior to his and Hand's getting into the pickup. Appellant testified that he had heard no such conversation. The conversation is significant in the Government's view, as supporting proof of Johnson's knowledge of the stolen nature of the Pontiac, a $4,000 automobile.

Glasser v. United States, 1942, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704. The appellant's conviction is due to be sustained if the jury was reasonably entitled on this basis to find guilt beyond a reasonable doubt. United States v. McGlamory, 5 Cir. 1971, 441 F.2d 130, 134; United States v. Warner, 5 Cir. 1971, 441 F.2d 821, 825, cert. denied, 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58. There is a rebuttable presumption that one in possession of recently stolen property knows the property to have been stolen. Barnes v. United States, 1973, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380. This presumption may be overcome if the accused offers an explanation of his possession inconsistent with knowledge that the property is recently stolen,[4] Id., the reasonableness of such explanation being for the jury. Our consideration of the evidence is against this backdrop.

■ The undisputed fact of appellant's possession of the recently stolen vehicle is the most important single piece of evidence. This alone was all that was required to give rise to the presumption of guilty knowledge, and sufficiently supported denial of the motion for a directed judgment of acquittal. There are additional factors present which the jury was entitled to consider as probative of defendant's knowledge that the automobile in question was stolen.

First, the government argues that the upturned end on the labelling tape used to conceal the stolen automobile's true VIN was open and apparent to the appellant or anyone driving the Pontiac and supports the theory that appellant knew that the automobile was stolen. The appellee argues in the second place that the suspicious circumstances under which the automobile was delivered were inconsistent with a legitimate sale and delivery of an automobile, and should have alerted Johnson to the fact that he was dealing with a stolen car. The appellee points out that the vehicle was to be delivered in the nighttime behind the barrier at the end of an uncompleted interstate highway. Finally, the government urges that the jury was entitled to accept Hill's version that Johnson overheard the conversation between Hand and "Ray" which disclosed the unreasonably low purchase price to be paid by "Ray" for the car. It is argued that this evidence, individually and collectively, afforded the jury a sufficient basis for concluding that the appellant knew the automobile in his possession was stolen.

In his defense Johnson testified that it had been his understanding that Hand was a dealer in used cars; further that he did not know Hand well but that, through a mutual friend, Hand had obtained appellant's name as one who might be interested in driving an automobile to Autaga County for $25. Appellant testified that he accepted Hand's offer because he was temporarily out of work and needed money. He denied any knowledge that the automobile to be transported was a stolen vehicle.

We find that the jury was reasonably entitled to conclude from Johnson's possession and the other circumstances in evidence that he knew the car was stolen on the night that he drove it to Autaga County. The credibility of Johnson's version of the facts and the reasonableness vel non of his explanation of his possession of the stolen car were typical jury questions, put at rest by its verdict.

### III. *Failure to Declare a Mistrial*

■ Appellant's second contention is that the trial judge should have ordered a mistrial when the prosecuting attorney began a question on cross-examination

---

4. The partial record brought up does not contain the jury instructions, so we do not know whether or not this presumption was included in the court's charge to the jury. Appellant, however, does not challenge the validity of the presumption nor does he challenge the charge to the jury.

of the appellant as follows: "About two months prior to this [the arrest for possession of the stolen vehicle] were you arrested in Birmingham. . . . ?" (Question interrupted by objection from appellant's counsel below).

At this point, appellant's counsel and the prosecuting attorney engaged in a side bar conference out of the hearing of the jury. When this discussion ended, the prosecuting attorney withdrew his proposed question and continued his cross-examination. The record does not indicate any motion for mistrial at this point or later, nor that the trial judge gave or was requested to give a cautionary instruction to the jury not to consider this incomplete question. Appellant argues that the content of this uncompleted question was so prejudicial as to constitute the failure to declare a mistrial "plain error", Rule 52(b), F.R. Crim.P.

We note that appellant's counsel failed to move for a mistrial when the incident occurred or later. If the prejudice flowing from it was as grave as he now asserts, he has apparently formed this conclusion after the event.[5] Appellant's counsel did not specify for the record the grounds for his generalized objection to the prosecuting attorney's uncompleted question that the remarks would be prejudicial to the defendant. We consider the question before us therefore as whether or not it was prejudicial rising to "plain error" for the trial judge to fail to grant a mistrial *sua sponte*. F. R.Crim.P. 52(b); Smith v. United States, 5 Cir. 1965, 343 F.2d 539, 542, cert. denied, 382 U.S. 861, 86 S.Ct. 122, 15 L.Ed.2d 99. We made clear in United States v. Thomas, 5 Cir. 1970, 429 F. 2d 407, 408: "An appellate court will not review actions of omission or commission by a trial court unless the defendant makes known to the court the action which he desires the court to take or his objection to the action taken by the court *and the grounds therefor*". (Emphasis added).

Appellant relies upon Odom v. United States, 5 Cir. 1967, 377 F.2d 853, also a Dyer Act, Title 18, Sec. 2313 prosecution. There one of the arresting officers was asked on the stand how long he had known the defendant, to which the officer responded: "I had seen Mr. Odom come in and out of jail and spoke with him for approximately a year and a half". *Id.* at 859. Counsel promptly moved to strike this testimony, which the trial court did, giving an attempted curative instruction to the jury not to consider the statement in arriving at a verdict. Despite this, we held that the failure of the trial judge to grant a mistrial *sua sponte* was plain error requiring reversal.[6]

Seven months after the decision in *Odom*, supra, this court considered an-

---

5. To make sure that the record is complete as to this occurrence we have sought out the trial court reporter. His notes do not, at this point in the record or elsewhere, reveal any motion for mistrial or further reference to the incident. No further action by the trial judge was sought at a time when he might have attempted to clear the matter up for the jury. This should have been called to our attention by the appellee's brief, but was not.

6. In *Odom*, counsel did not object to the officer's statement on the ground of prejudice but rather, objected to the statement as being unresponsive to the question asked. In addition, Odom's counsel made no motion for a mistrial. As here, no motion for mistrial was made when the incident occurred, but the trial judge was nevertheless held in error for not granting a mistrial sua sponte.

We point out additionally that the declaration of mistrials without a motion therefor may lead to serious double jeopardy problems. Illinois v. Somerville, 1973, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425; United States v. Kin Ping Cheung et al., 5 Cir. 1973, 485 F.2d 689; McNeal v. Hollowell, 5 Cir. 1973, 481 F.2d 1145; Smith v. Mississippi, 5 Cir. 1973, 478 F.2d 88.

other appeal from a Dyer Act conviction, Leonard v. United States, 5 Cir. 1967, 386 F.2d 423, which involved a claim of error because the trial judge refused to grant a motion for a mistrial based on a witness' statement relating to defendant's prior arrest for a traffic violation. The witness, manager of a hotel where the defendant had registered, was asked how long the defendant had remained as a guest in her hotel. She replied: "My notation said that he was arrested on 6/8 * * *" (the witness was interrupted by the court at this point). The trial judge denied the defendant's motion for a mistrial, gave a curative instruction to the jury, and allowed the trial to proceed. We affirmed on appeal and distinguished *Odom,* supra. Our comment in *Leonard* in distinguishing Odom applies to this case. The statement by the witness in *Leonard,* like the question of the prosecutor in the instant case, was incomplete. In *Leonard* we said:

> [W]hen we view [the hotel manager's] statement in context with the trial, we must reject escalating the words to an interdicted status. Unlike *Odom,* the arrest here could have been for a minor offense or without cause; the word "arrest" does not absolutely connote guilt. * * * The mention of arrest added nothing to the case and cannot be compared with "jailhound" testimony in a case where criminal intent was a contested issue. 386 F.2d at 425.

The facts in this case are more favorable to the government than were those in *Leonard* since the prosecutor's incomplete question only raised the issue of whether the appellant had been arrested and did not state affirmatively that he had in fact been arrested. If any prejudice here flowed from the uncompleted question it was slight and did not rise to the level of plain error affecting substantial rights of the appellant and requiring reversal.

Affirmed.