UNITED STATES of America, Plaintiff-Appellee,

v.

Bobby Gene CASEY, Defendant-Appellant.

No. 75–1728.

United States Court of Appeals, Fifth Circuit.

Oct. 15, 1976.

C. H. Hollingsworth, Jr., Rome, Ga. (court appointed), for defendant-appellant.

John W. Stokes, U. S. Atty., William F. Bartee, Jr., Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Appeal from the United States District Court for the Northern District of Georgia.

Before BROWN, Chief Judge, and GOLDBERG and RONEY, Circuit Judges.

**JOHN R. BROWN, Chief Judge:**

This is a case under the Dyer Act for the transporting[1] and concealing[2] of a stolen motor vehicle moving in interstate commerce.[3] Several points of error were urged on appeal but only the first merits extended discussion: (i) whether the evidence was sufficient to support the jury's verdict of guilty under § 2312 and § 2313, (ii) whether the Trial Court properly denied Defendant's motion for continuance for the purpose of allowing him to shave, shower and put on a different set of civilian clothes to stand trial, (iii) whether the allegation of ineffective assistance of counsel, presented in Defendant's separate *pro se* brief is properly presented for decision in this appeal, and (iv) whether the search and seizure of the vehicle the Defendant was driving at the time of his arrest violated the Fourth Amendment. Because we find that the evidence was insufficient to support the jury's verdict of guilty under § 2313, we reverse the conviction as to that count. The conviction under § 2312 is affirmed.

### From Alabama To Georgia

Martin Blalock, who owned the 1972 Chevrolet pickup which was stolen, lived on Route 1, Mentone, Alabama. On September 27, 1974, Mr. Blalock left his home to attend a church convention in St. Petersburg, Florida, and he did not return until about October 9 or 10. He last saw his truck parked in his front yard along with a jeep. Blalock had left the keys to the truck in a table drawer inside his house and had given no one but his daughter permission to use the truck while he was gone.

When he returned home from the Florida trip he found that someone had been in his house and rummaged through his drawers and had stolen his shotgun and his pickup. He also noticed that the ignition switch to the jeep had been damaged as if someone had tried to turn it with a screw driver.

Mack Blalock, the victim's uncle, testified that he also lived in Mentone, Alabama close to Martin Blalock's house and on October 5, 1974 had driven by the victim's house about 5:00 or 5:30 in the afternoon and had seen both the truck and the pickup parked in the front yard as they had been left when Martin departed for the church convention.

On October 5, 1974, at about 9:45 p. m. Corporal Stamey and his partner were on routine patrol near Rome, Georgia when they noticed a pickup truck, traveling in the opposite direction, which was impeding traffic and had several cars behind it. Officer Stamey turned around and after several minutes got close enough to the pickup truck to notice that it had Alabama plates and was weaving slightly on the road and accordingly stopped it for a routine investigation.

### Casey's Stories

Upon Officer Stamey's request the driver, Casey the Appellant, got out of the truck but could not produce a driver's license or other identification, ownership papers or a vehicle registration certificate. During their discussion, Officer Stamey smelled alcohol on Casey's breath and so he made the decision to take him to the county seat for an intoximeter breath test. This

---

1. § 2312. Transportation of stolen vehicles

   Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

2. § 2313. Sale or receipt of stolen vehicles

   Whoever receives, conceals, stores, barters, sells, or disposes of any motor vehicle or aircraft, moving as, or which is a part of, or which constitutes interstate or foreign commerce, knowing the same to have been stolen, shall be fined not more than $5,000 or

imprisoned not more than five years, or both. June 25, 1948, c. 645, 62 Stat. 806.

3. The Defendant in this case was indicted under two counts, the first for transporting a stolen vehicle and the second for receiving and concealing the vehicle. He received a four year sentence on each count to run consecutively, so we cannot escape ruling on his conviction under count two for receiving and concealing by utilizing the well-worn concurrent sentence doctrine. *See United States v. Rivero,* 5 Cir., 532 F.2d 450, 452–53 n. 4 and cases cited therein.

test showed that although Casey had been drinking, the alcohol content of his blood was below the minimum necessary for prosecution for driving while intoxicated.

When Casey stopped the pickup on the side of the highway he had left the wheels on the shoulder of the road and consequently Stamey told his partner, Officer Baker, to move the truck off the road into a nearby service station since the truck in its position on the shoulder of the road presented a hazard. However, Officer Baker was unable to get the pickup started. When Stamey walked over to help him he saw that the ignition switch was hanging down below the dash and looked as though it had been "straight wired", which is a method often used by car thieves to start a vehicle without an ignition key.

At the time of his arrest Casey attempted to explain his possession of the stolen vehicle by saying that he had purchased the truck at a cattle sale in Rome, Georgia where other merchandise including vehicles is frequently sold.

But at trial Casey took the stand and told quite a different story. He testified that on the evening of October 5, he was drinking beer at the Funny Face Tavern when an acquaintance of several years past, named Red King, drove up in the stolen truck. King asked Casey if he would take the pickup and go to a liquor store to get a pint of liquor and Casey obliged although he had no money at that time. He was on his way to pick up some money at his apartment and then go to the liquor store when he was stopped en route by the patrolmen. He insisted he had never seen the truck before or after and likewise had never seen Red King after that occasion. In attempting to reconcile his inconsistent stories he said he told the patrolmen that he bought the truck in order to protect Red because he knew the law was already looking for Red

although he denied knowing that the pickup truck was stolen.

### Sufficiency Of The Evidence

We must adhere to the well established rule in this Circuit that in the absence of a timely motion for judgment of acquittal made at the close of all the evidence, the question of the sufficiency of the evidence is not presented for appellate review unless to deny the appeal of this issue would foster a manifest miscarriage of justice. *See United States v. Perez,* 5 Cir., 1976, 526 F.2d 859, 864 n. 7 and cases cited therein. Here, although there was no motion for judgment of acquittal made (R. at 80, 100), we find that to deny our review of the sufficiency of the evidence under the § 2313 conviction (receiving and concealing a stolen motor vehicle) would foster a manifest miscarriage of justice. As to the conviction under § 2312 (transportation of a stolen motor vehicle), on the other hand, no manifest miscarriage of justice would result, in view of the quantum of evidence of transportation of a stolen vehicle which Casey practiced.

Since this case went to the jury, in ruling on Defendant's sufficiency of the evidence argument, we must review the evidence through *Glasser* glasses most favorably to the Government, *Glasser v. United States,* 1942, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704; *United States v. Gomez,* 5 Cir., 1976, 529 F.2d 412. And in a case based largely on circumstantial evidence such as this one, the inference drawn from such evidence must also be inconsistent with every reasonable hypothesis of innocence. *Hale v. United States,* 5 Cir., 1969, 410 F.2d 147, 149.

The Government does not argue that Casey both transported the stolen vehicle in interstate commerce in violation of 18 U.S.C.A. § 2312[4] and received it in violation of § 2313.[5] Rather, the Government has

---

4. § 2312. Transportation of stolen vehicles

Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

5. § 2313. Sale or receipt of stolen vehicles

Whoever receives, conceals, stores, barters, sells, or disposes of any motor vehicle or aircraft, moving as, or which is a part of, or which constitutes interstate or foreign commerce, knowing the same to have been sto-

limited itself to the argument that the specifically enumerated offenses in § 2313 [6] are to be read in the disjunctive and it is sufficient if the defendant is proven guilty of any one or more of the acts set out in the statute.[7] *United States v. McGlamory,* 5 Cir., 1971, 441 F.2d 130, 134; *United States v. Lee,* 5 Cir., 1970, 422 F.2d 1049. Thus, the prosecution's case under § 2313 turns on whether the Defendant *concealed* the stolen motor vehicle within the broad definition of that word as delineated by the cases interpreting this statute.[8]

■ Although the term "conceal" as used in § 2313 is not limited to physically secreting the vehicle, all of the cases which have found sufficient evidence to sustain a conviction for concealment have involved some overt physical act on the part of the Defendant. For example, this Circuit,[9] as others,[10] has held that acts such as altering title papers, changing vehicle identification

numbers, changing license plates, or making false statements on title applications, fall within the broad definition of the term.

■ The difference between oral deception and physical deception is a distinction with a difference under § 2313. All of the overt physical acts in other cases affirming § 2313 convictions operated in some sense to conceal the stolen vehicle as well as to conceal the crime.[11] Changing a car's license plates, like painting it a different color, is a deliberate and premeditated physical attempt to disguise the vehicle—to make it seem to be one other than the one which was stolen. A spontaneous verbal denial that one has stolen the car one is driving simply does not rise to this level of "concealment." [11.1] The stolen vehicle is there, in its original form, for all the world to see—through verbalization, the miscreant can only hope to conceal the fact that a crime has occurred.

len, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

**6.** Since the automobile was stolen in Alabama and the Defendant was found in possession of it shortly thereafter in Georgia there is no question that there was ample proof that the motor vehicle was moved in interstate commerce as required by the statute.

**7.** In his charge the District Judge specifically instructed the jury that if the Defendant received or concealed the motor vehicle he was guilty of the second count of the indictment pertaining to a violation of § 2313, R. at 93.

**8.** One might conceivably argue that if the evidence against Casey would support a 4 year consecutive sentence for receiving the stolen vehicle, the absence of evidence of concealment would give rise to no manifest injustice. The argument has no merit in this instance. First, and dispositively, the Government has nowhere argued that the Defendant received the stolen vehicle. The question of receipt simply has not been put before this court.

Moreover, even if properly presented to us, we would be unable on the facts proven here to impose consecutive sentences for transportation and receipt. In this appeal, the Government has shown nothing that might support a finding of receipt other than the act of transportation. No element of transportation not also an element of receipt has been proven; the

proof adduced at this trial cannot support a consecutive sentence for receipt under any definition of that offense.

**9.** *See, e. g., United States v. Stirewalt,* 5 Cir., 1974, 493 F.2d 1110 (Defendant represented himself as the true owner and had false identification numbers painted on a stolen aircraft); *United States v. Knight,* 5 Cir., 1974, 505 F.2d 112 (altered license plate and discrepancies in bill of sale); *United States v. Johnson,* 5 Cir., 1974, 489 F.2d 139 (false vehicle identification number and substituted license plates); *United States v. Lawrence,* 5 Cir., 1973, 482 F.2d 360, cert. denied, 414 U.S. 1070, 94 S.Ct. 582, 38 L.Ed.2d 476 (altered identification number and title papers).

**10.** *See, e. g., United States v. Pichany,* 7 Cir., 1973, 490 F.2d 1073 (altered identification numbers and out of state license plates obtained by false statements in application); *United States v. Carney,* 10 Cir., 1972, 468 F.2d 354 and *United States v. Thompson,* 6 Cir., 1970, 422 F.2d 1104, *affirmed,* 442 F.2d 1333 (conflicting statements as to how defendant received stolen vehicle).

**11.** *See* notes 9 and 10, *supra.*

**11.1.** In reaching our conclusion that mere oral deception does not rise to the level of "concealment" required for a conviction under § 2313, we are guided by the doctrine that ". . .

■ In the case at bar, the only evidence of "concealment" was Casey's story to Officer Stamey about purchasing the truck at a cattle auction. R. at 43, 49. Since no evidence of physical deception or concealment was alleged or proved by the Government, we must reverse Casey's conviction under § 2313, for the evidence is insufficient to support the jury's verdict of guilty as to that count.

■■ We have no difficulty in finding sufficient evidence to support the Defendant's conviction under § 2312 for transporting the motor vehicle in interstate commerce.[12] Citation of authority is hardly necessary to support the familiar proposition of law under the Dyer Act that unexplained possession[13] of a recently stolen vehicle gives rise to a permissible inference of transportation and knowledge of its stolen character. See, e. g., Barnes v. United

States, 1973, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380; United States v. Johnson, 5 Cir., 1974, 489 F.2d 139; United States v. Abigando, 5 Cir., 1971, 439 F.2d 827; United States v. Penner, 5 Cir., 1970, 425 F.2d 729. And here the jury was entitled to weigh more heavily the fact that Defendant was found driving a pickup truck stolen only a few hours before in another state than the Defendant's uncorroborated and inconsistent explanations of how he received the truck.

### Tag Ends

■ The other three points of error urged by the Defendant are likewise without merit. On this record the Trial Judge did not abuse his discretion[14] in denying Defendant's motion for continuance[15] after the jury had been selected, so that the Defendant could put on a fresh civilian outfit and take a shower and shave.[16] Re-

[C]riminal statutes must be strictly construed, to avoid ensnaring behavior that is not clearly proscribed." Simpson v. Simpson, 5 Cir., 1974, 490 F.2d 803, 809, cert. denied, 419 U.S. 897, 95 S.Ct. 176, 42 L.Ed.2d 141. As the Supreme Court stated in Bell v. United States, 1955, 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905, "when Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity." See also U. S. v. Box, 5 Cir., 1976, 530 F.2d 1258, 1266 & n. 27; U. S. v. Bridges, 5 Cir., 1974, 493 F.2d 918, 922–23.

12. See note 3, supra for a discussion of the interstate commerce element of the offense as related to the facts of this case.

13. There is no doubt about Casey's actual knowing possession. Cf. Barfield v. United States, 5 Cir., 1955, 229 F.2d 936.

14. The Trial Court's ruling on motion for continuance will not be disturbed on appeal absent a clear showing of abuse of discretion by this Court. United States v. Harper, 5 Cir., 1974, 505 F.2d 924; United States v. Moriarty, 5 Cir., 1974, 497 F.2d 486, 489.

15. Of course, this case does not involve the problem recently considered by the Supreme Court in Estelle v. Williams, 1976, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126, where the failure to object to being tried in prison garb constituted an effective waiver of such a constitutional attack to conviction on appeal and further that the state's failure to provide civilian clothes for trial, does not amount to com-

pelling the accused to stand trial in prison garb which is of course proscribed by the Fourteenth Amendment.

Here, the Defendant made a timely objection so this issue is properly before this Court. See also, Cole v. Estelle, 5 Cir., 1976, 532 F.2d 1039.

16. The Court responded to the Appellant's motion as follows:
The Court: Well, let me say this for the record, since you had made statements of fact, I will have to make some.
At about 9:30 the Court was about ready to convene. You made that fact known to me, and I told you at that time that I would if he did have clean clothes available to him over there at the jail, that I would send the Marshal over to the County Jail and have them brought over here so that he could put them on, and that I personally know that there are laboratory facilities in the holding cell where he was in this building and that he clean up and wash up in there (sic), and I would have his clothes brought over to him and he could change clothes and I purposely postponed the selection of the jury in his case for forty-five minutes in an effort—I said for half an hour but it turned out to be forty-five minutes—in effort to give him a chance to wash up and to put on clean clothing, or what he calls, what I understand is clean clothing.
During the selection of the jury in another case the Marshal informed me that Mr. Casey, that the clothes that were brought to him were available to him, and refused to put the clothes on unless he could take a shower.
Now, we do not have shower facilities in the holding cell, and, therefore, I couldn't delay the

gardless of the merits of Defendant's claim that this denial was error and rose to Constitutional dimensions, the prejudice arising therefrom to the Defendant, if any, was harmless error beyond a reasonable doubt.[17] As to the merits we should distinguish our many cases holding that it is unfair to try a Defendant in prison garb.[18] Unlike the prison uniform cases, this case involves the Defendant's prerogative to be tried in one set of civilian clothes as opposed to another and no constitutional violation occurs so long as his dress does not badge him as a criminal, in the jury's eyes, as is the case with prison uniforms. *United States v. Fideler*, 5 Cir., 1972, 457 F.2d 921. *Cf. Estelle v. Williams*, 1976, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126.

■ We pretermit any discussion or decision at this time of the claim of ineffective assistance of counsel which is made in the Defendant's separate *pro se* brief. On this record this claim, if meritorious, must await collateral attack in a § 2255 proceeding.

■ Finally, we reject out of hand the contention that the search of the pickup which was made incident to Defendant's arrest violated the Fourth Amendment. The circumstances provided ample probable cause to arrest[19] and the locality of the arrest provided a sufficient exigency to warrant the officer making an on the spot search of the vehicle without a warrant. *Carroll v. United States*, 1925, 267 U.S. 132, 167, 45 S.Ct. 280, 69 L.Ed. 543, 555. *Cf. Coolidge v. New Hampshire*, 1971, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564; *Chambers v. Maroney*, 1970, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419.

REVERSED IN PART AND AFFIRMED IN PART.

trial of this case by sending him back over to the County Jail to take a shower then come back over here and start the trial of the case. I am now personally observing Mr. Casey in the courtroom, and I do not regard his clothes as being dirty. I see no soiled clothes on him. He is dressed in a light green polo shirt and trousers, and it doesn't look to me he's in as bad shape as you say he is in. In fact, there have been defendants on trial this week that look much worse than he does as far as their physical appearance is concerned.

In view of the fact that I did offer to get him an opportunity to wash up and to put on clean and he failed to do that, then how he chooses to appear in Court from that point forward is his business, and I will not hear from him now on a motion for continuance, and will deny the motion for continuance. (T. 6–7)

17. "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 1967, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710. *See also Zilka v. Estelle*, 5 Cir., 1976, 529 F.2d 388, 389–390.

18. *See, e. g., Hernandez v. Beto*, 443 F.2d 634 (5th Cir. 1971), cert. denied, 404 U.S. 897, 92 S.Ct. 201, 30 L.Ed.2d 174 (1971); *Garcia v. Beto*, 452 F.2d 655 (5th Cir. 1972); *United States v. Fideler*, 457 F.2d 921 (5th Cir. 1972); *Goodspeed v. Beto*, 460 F.2d 398 (5th Cir. 1972); *Hollins v. Beto*, 467 F.2d 951 (5th Cir.

1972); *United States ex rel. Stahl v. Henderson*, 472 F.2d 556 (5th Cir. 1973); *Thomas v. Beto*, 474 F.2d 981 (5th Cir. 1973); *Williams v. Beto*, 364 F.Supp. 335 (S.D.Tex. 1973); *St. Jules v. Beto*, 371 F.Supp. 470 (S.D. Tex.1974); *Hollins v. Beto (Williams v. Beto)*, 373 F.Supp. 1246 (S.D.Tex.1974) [No. 71–H–295, No. 72–H–1056, decided jointly April 2, 1974]. But see *Xanthull v. Beto*, 307 F.Supp. 903 (S.D.Tex.1970); *McFalls v. Peyton*, 270 F.Supp. 577 (W.D.Va.1967), aff'd 4th Cir. 1968, 401 F.2d 890, cert. denied, 394 U.S. 951, 89 S.Ct. 1292, 22 L.Ed.2d 486.

19. For an explanation of some of the facts of the arrest which would indicate to the arresting officer that criminal activity was afoot, *see* note 5, *supra*. In *United States v. Perez*, 5 Cir., 526 F.2d 859 we followed the Supreme Court's classic statement that probable cause exists where "the facts and circumstances within [the arresting officers] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that "an offense has been or is being committed. *Id.* at 862. *Citing Brinegar v. United States*, 1949, 338 U.S. 160, 75–76, 69 S.Ct. 1302, 93 L.Ed. 1879, 1890. Applying this standard to these facts we conclude that the officers were warranted in making the arrest and in conducting the limited search of the vehicle incident thereto.