**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Dennis Edward McGUIRE and Benjamin Rivera, Defendants-Appellants.**

No. 79–5020.

United States Court of Appeals, Fifth Circuit.

Dec. 26, 1979.

Rehearing and Rehearing En Banc Denied Feb. 20, 1980.

Michael J. Doddo, Miami, Fla., for McGuire.

Robyn J. Hermann, Asst. Fed. Public Defender, Miami, Fla., for Rivera.

Bruce A. Zimet, Asst. U.S. Atty., Miami, Fla., for plaintiff-appellee.

Before BROWN, TJOFLAT and GARZA, Circuit Judges.

GARZA, Circuit Judge:

Dennis McGuire and Benjamin Rivera were accused of having taken part in a scheme to sell cocaine along with Leah Skwierc, who pleaded guilty, and Elroy Garcia, who is a fugitive. McGuire and Rivera were tried together, and convicted on each of three counts charged in the indictment: Conspiracy to distribute cocaine, distribution of cocaine, and possession of cocaine with the intent to distribute.[1]

The uncontroverted facts established that McGuire, Rivera, and Skwierc, Rivera's lover, met in a hotel bar with a man they believed to be a heroin dealer named "Nick" on June 19, 1978. "Nick", however, was federal agent Nicholas Zapata. A discussion on the sale of cocaine to him was held. During the meeting, Rivera vouched for Zapata's ability to pay, and volunteered to count the money when the transaction reached fruition. McGuire offered to procure and deliver the drug. The group agreed upon June 22nd as the date of exchange.

On the 22nd Zapata called Skwierc to advise her that he could not perform on that day. She expressed anger. Zapata talked with Rivera on a second call, and he also spoke angrily about the delay, stating that he had his people ready.

On June 23rd the transaction was attempted. Rivera and Skwierc checked into the appointed hotel, taking a room in his

---

1. 21 U.S.C. § 846, and 21 U.S.C. § 841(a)(1); 18 U.S.C. § 2.

name. Rivera remained in it, and Skwierc went to meet Zapata and McGuire in front of the hotel. The group divided there, Zapata and Skwierc going to another hotel room to count the money, and McGuire and several other agents going to obtain cocaine from Garcia.

As Skwierc counted Zapata's money, their conversation was taped by agents in an adjoining room. She told Zapata that McGuire was the person that she had previously spoken to him about, and that McGuire had a brother in Lima, Peru, who processed cocaine. The tape also contained Skwierc's part of a telephone conversation with McGuire in which she told him the funds were present. It was played to the jury at trial.

Skwierc was arrested by Zapata after she finished counting and talking to McGuire. Her purse was searched incident to the arrest, and the key to Rivera's room was discovered. The agents learned from a hotel clerk that the room was registered to Rivera, and it was entered, searched, and Rivera was arrested. He was found partially undressed, lying on the bed with a half-eaten dinner, and watching television. McGuire was arrested when he returned with the drug.

At their joint trial, McGuire moved for severance, both under *Byrd v. Wainwright*, 428 F.2d 1017 (5 Cir. 1970), and Fed.R. Crim.P. 14. He timely objected to the admission of the taped conversations, arguing they were *prejudicial hearsay inadmissible* under Fed.R.Ev. 403, and not admissible as a conversation "in furtherance of the conspiracy" under Fed.R.Ev. 801(d)(2). Both motions were denied, and these rulings are assigned to us as error.

McGuire's attempted defense was entrapment. He testified that he was told by his friend Skwierc that she had become involved with the drug dealer, and that he went to the June 19th meeting to extricate her. He testified that once at the meeting he was so intimidated by bellicose statements from Zapata about the potential danger those privy to the dealings were in, that he was compelled to go along in fear of his

life. He contends that the alleged errors of the court below set up impermissible roadblocks to the presentation of his entrapment defense.

Rivera moved at trial to suppress any evidence of his presence in the hotel, contending that it was the fruit of an illegal search of his hotel room. The court reserved its decision, and at the close of the evidence ruled the search unlawful. In the interim, Rivera called Skwierc, who attempted to portray his presence at the hotel *and at earlier meetings* as that of an innocent bystander only accompanying her. He now claims that he was forced to explain his presence at the hotel by the trial court's delay in ruling, supplying the evidence to support his own conviction in denial of his rights to due process and a fair trial. In a separate point Rivera contends the evidence below was insufficient to support the jury's verdict, with or without the testimony of his presence in the hotel. He further assigns as error a comment by the district court that passed-over portions of a tape played to the jury were excluded. In that the prosecutor appeared eager to have the portions played, it is argued that the inference of harmful evidence was raised, denying Rivera due process and a fair trial. He did not, however, raise an objection below.

### APPELLANT McGUIRE

The basis of McGuire's *Byrd* motion for severance was to obtain the testimony of Rivera, in order to bolster McGuire's defense of entrapment. Rivera did not in fact testify for the jury, but only pursuant to the motion.

At that time Rivera testified that on June 19th Zapata did speak of being a heroin dealer, a "big man all over the country." On cross-examination Rivera was asked whether he had any prior conversations with McGuire concerning cocaine. He took the Fifth Amendment and refused to answer. On a third question, whether prior to June 19th he had knowledge of McGuire's involvement with cocaine he answered, "no." Rivera testified that he had difficulty remembering the events of June

19th and had no understanding as to how McGuire had reacted to agent Zapata.

By this court's decision in *Byrd v. Wainwright, supra,* criteria were laid out for a determination of the necessity of severance to obtain a co-conspirator's testimony. Among those criteria are affirmative findings that the proferred testimony is exculpatory, on a clear showing of what the co-defendant would testify to, and that the codefendant is in fact willing to testify.

Here, McGuire failed to meet the exculpatory criteria for several reasons. He made no clear showing as to what his co-defendant would testify to. He also failed to show any nexus between the somewhat confused example of Rivera's testimony, and McGuire's entrapment defense. It was not established that Skwierc or McGuire were threatened by Zapata, or that they entered the transaction due to such fears, or even that such ideas were communicated between the parties. Further, due to Rivera's use of the Fifth Amendment during cross-examination, there was not shown a likelihood that he would have been willing to give exculpatory testimony on a separate trial.

The *Byrd* court noted that . . . "[I]f the testimony is purely cumulative, or of negligible weight or probative value, the court is not required to sever. The requirement is not a trial which guarantees the defendant every item of evidence he would like to offer, but one which meets the constitutional standards of due process." 428 F.2d at 1021. We find that standard to have been met below and accordingly overrule McGuire's contention that he was entitled to a severance under the authority of *Byrd.*

McGuire additionally moved for severance under Fed.R.Crim.P. 14.[2] He argues that joint trial with Rivera subject him to unfair prejudice by compelling a choice between his constitutional rights to cross-examine adverse witnesses and to call witnesses in his favor.

McGuire has stated that he moved for a severance when he was surprised by Skwierc's guilty plea, and Rivera's calling her to testify for him. Her voir dire testimony had painted him as the primary figure behind the transaction. McGuire continues to assert that Rivera was willing to give exculpatory testimony for him. Thus, he claims that he could not conduct a vigorous cross-examination of Skwierc without risking the ire of Rivera and the loss of his testimony. He did not cross-examine Skwierc.

We view McGuire's choice in a different light. In most joint trials of those accused of participation in a criminal scheme, conflicts involving a choice of tactical alternatives will arise, particularly where different defenses are urged. The appropriate policy, long sanctioned by the decisions of this court, is that persons jointly indicted should be jointly tried, particularly in conspiracy cases. *United States v. Kelly,* 569 F.2d 928 (5 Cir. 1978). Rule 14, addressing problems of prejudice, involves the tension between that policy and those joinders that result in unfair prejudice. Accordingly, a District Court confronted with a Rule 14 Motion for Severance is required to balance any such prejudice against the interests of judicial economy, a consideration involving substantial discretion. *See United States v. McLaurin,* 557 F.2d 1064, 1074–5 (5 Cir. 1977).[3]

---

**2.** Rule 14 in pertinent part provides:
   If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the Court may order an election or separate trial of counts, grant a severance of defendants or provide whatever other relief justice requires.

**3.** *McLaurin* quotes *Tillman v. United States,* 406 F.2d 930, 935 (5 Cir. 1969), vacated in part, 395 U.S. 830, 89 S.Ct. 2143, 23 L.Ed.2d 742

(1969), for the general test used in determination of a Rule 14 Severance Motion:
   * * * [W]hether under all the circumstances of the particular case, as a practical matter, it is within the capacity of the jurors to follow the court's admonitory instructions and accordingly to collate and appraise the independent evidence against each defendant solely upon that defendant's own acts, statements, and conduct. In sum, can the jury keep separate the evidence that is relevant to

The burden upon an appellant in showing prejudice has aptly been characterized as "heavy." *United States v. Lane,* 465 F.2d 408, 413 (5 Cir. 1972).

■ McGuire has shown that he was confronted with a tactical choice. What he has not demonstrated is that joinder compelled him to make the choice of cross-examining Skwierc or not, and thus he has failed to demonstrate any prejudice flowing from denial of the motion. We note that Skwierc's actual testimony before the jury was limited to exculpation of Rivera and involved no significant inculpation of McGuire. Further, even if McGuire were tried separately, Skwierc's testimony would have been within range of the Government's subpoena power. Appellant's motivation in refusing to cross-examine could just as easily have been fear of greater harm.[4] We remain unconvinced that Rivera had exculpatory testimony for McGuire. In sum, McGuire's argument amounts to speculation heaped upon speculation, and does not approach the strong showing of prejudice required. The court below did not abuse its discretion in denying the Severance Motion.

In his second assignment McGuire contends that it was error to admit as evidence certain portions of the recording made of Skwierc and Zapata as she counted the money immediately prior to her arrest. Those portions are alleged to contain prejudicial hearsay barred by Fed.R.Ev. 403, and not within the exception afforded co-conspirator statements made "in furtherance of the conspiracy," within Fed.R.Ev. 801(d)(2)(E).

The declarations complained of consist of comments by Skwierc to Zapata that

McGuire was the person they had previously spoken about, and statements that McGuire's brother processed cocaine in Peru. Also included was Skwierc's part of a conversation with McGuire in which she told him that the funds were present.

■ McGuire stated in his brief that "this court has not set forth a criteria to aid trial courts in determining what is meant by the phrase 'in furtherance of the conspiracy.' " He relied upon two cases decided in the Ninth Circuit, *United States v. Eubanks,* 591 F.2d 513 (9 Cir. 1979) and *United States v. Moore,* 522 F.2d 1068 (9 Cir. 1975). We disagree with his statement concerning lack of direction in this court, noting that criteria were set forth in *United States v. James,* 510 F.2d 546 (5 Cir. 1975). We perceive no conflict between the Ninth Circuit cases and *James.* Under any of the authorities cited, the recorded statements are co-conspirator declarations squarely within the "in furtherance" exception.

■ In *James,* this court held that in order for co-conspirator statements to be admissible under Rule 801(d)(2)(E), there must be proof *aliunde* of the existence of a conspiracy, and of the defendant's involvement in it. 510 F.2d at 549. Here, there was more than adequate proof of both elements. In addition, the statements must simply be "in furtherance of the conspiracy." Mere conversation between co-conspirators is not admissible under this exception. It was noted in *James* that though the phrase has a "talismanic" ring, "we must not apply the standard too strictly, lest we defeat the purpose of the exception." *Id.*[5] It is obvious that the telephone

---

each defendant and render a fair and impartial verdict as to him? If so, though the task be difficult, severance should not be granted. *McLaurin,* 557 F.2d at 1075.

4. It should be noted that on oral argument, attempting to explain why the opportunity was passed, counsel for McGuire stated:

The reason why we didn't do that in front of the jury is because it was clear to us that this lady was lying. She was lying during the trial, she was lying during the direct testimony, she was impeached by the Government, she was lying on a tape recorded conversa-

tion, she was lying. There was no sense in putting this woman up to answer questions she was going to lie about.

5. Indeed, the Trial Court appears to have had the meaning of *James* well in hand when he told counsel:

You see, here is where you and I are having our problem: You are treating the words "in furtherance of the conspiracy" in a very literal sense that the statement that is made at any given time by a co-conspirator has to literally be in the advancement of the con-

conversation with McGuire concerning delivery of the funds contributed directly to fruition of this transaction. The other comments we view as a form of "puffing." Skwierc, McGuire and Rivera were engaged in a commercial enterprise, albeit an illegal one. They had found an outlet in Zapata, and the Skwierc statements were a combination of boasts and information directed toward obtaining his confidence that they possessed both a source and the will to deal with him. The District Court acted properly in admitting these portions of the tape.

### APPELLANT RIVERA

Rivera in his first assignment contends that the District Court erred in ultimately allowing the jury to hear and consider evidence of his presence in the hotel where this transaction was to be culminated. The facts surrounding his arrest are alleged to be the evidentiary fruit of an unlawful entry into his hotel room by agents using the key discovered in Skwierc's purse incident to her lawful arrest. Rivera moved at trial to suppress evidence of his presence.[6] The Court reserved its ruling. Rivera claims that this delay forced him to call Skwierc as a witness to explain his presence.[7] At the close of the evidence, Rivera pressed the court to rule on his motion to suppress, and the entry was ruled unlawful. However, the prosecution was allowed to argue Rivera's presence to the jury, on the ground that he had placed it in evidence himself.[8] In this sense, Rivera contends he was forced to supply crucial evidence that went to convict him.

This series of arguments may be disposed of without considering all of the tangents Appellant would have us pursue. We find that the entry to arrest Rivera was lawful, and that the evidence of Rivera's presence, being no more than the factual context of a lawful arrest was properly before the jury.

It has been repeatedly held to be the law of this circuit that where officers "have probable cause to arrest for a felony and the exigencies of the situation make it imperative that they proceed without waiting to obtain a warrant, the arrest is not constitutionally invalid." *United States v. Gaultney,* 581 F.2d 1137, 1146 (5 Cir. 1978), *citing United States v. Williams,* 573 F.2d 348 (5 Cir. 1978), *United States v. Hofman,* 488 F.2d 287 (5 Cir. 1974). Probable cause will exist where " 'the facts and circumstances within the arresting officer's knowledge and of which he had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution to believe that an offense has been or is being committed.' " *United States v. Savage,* 564 F.2d 728, 732 (5 Cir. 1977). In *Savage,* this court held that officers had probable cause

---

spiracy, and I am saying to you I think that is probably too literal.

6. The Government maintains that the motion was untimely. Our disposition of this point does not require us to decide the question.

7. We note that the Trial Court was not pressed to rule on the suppression motion immediately prior to Skwierc's testimony, and that she attempted to explain not only his presence at the hotel, but also his participation in the earlier meetings. For these reasons we doubt that the District Court's action forced Rivera to call Skwierc.

8. The District Court's rationale for ruling the entry unlawful and yet allowing argument on Rivera's presence is best described by comments made at the time of the ruling:

MR. ROBBINS: Well, my problem was that your Honor wanted to take it under advisement. You had not made a ruling at that point, so I had to go forward with my case.

THE COURT: Well, now, I am in a predicament, as Mr. Zimet said, that is true.

MR. ZIMET: I am not saying he is in a predicament. I am saying his arguments are not consistent.

THE COURT: Well, now, I understand what you both are saying. I think technically—and this will be in the form of a ruling—I think technically you are correct, that there was an illegal search and seizure. I think, however, that you cannot prevent the Government from arguing he was there, if only from the registration and the admissions of Leah Skwierc.

MR. ROBBINS: Okay.

THE COURT: Do you understand what I am saying?

MR. ROBBINS: Yes, your Honor.

THE COURT: So as far as the argument that he was there is derived from the fact that they walked in the door and saw him, your point is well taken, and I so rule.

to enter a hotel room and arrest the Appellant without a warrant, where they knew that someone in the room had passed a counterfeit bill, and Savage, identified as the passer, was seen returning to the room. *Hofman,* another counterfeiting case, also involved government surveillance of a hotel room. An agent purported to sell to a defendant who had brought money from the room, and was arrested. The court upheld the validity of an entry of the room to arrest the others on that basis, citing *Williams.* 488 F.2d at 289.[9]

 In this case, the agents had personal knowledge of Rivera's deep involvement in the conspiracy to sell cocaine, and learned of his presence in another room of the hotel where the transaction was taking place, with little time before completion should occur. The officers had probable cause to arrest Rivera, and the exigencies of this situation demanded and excused an immediate entry of his room to arrest him.

Rivera's second assignment involves sections of the tape recording made of Skwierc and Zapata which were excluded by the District Court. The tape was played to the jury by passing over excluded portions. The record indicates that the prosecutor manifested a desire to have the passed-over portions played, thus, according to Rivera's argument, raising an inference that excluded evidence was harmful to him.

 Rivera did not object below, and thus we must determine whether these actions constituted "plain error" denying Appellant due process and a fair trial. Under that analysis, we will reverse only for errors involving serious deficiencies which affect the fairness, integrity, or public reputation of the judicial proceedings or which constitute obvious error. *See United States v. Cook,* 592 F.2d 877 (5 Cir. 1979). We find no such error here, where the District Court instructed the jury: "The testimony and exhibits to which the court has sustained an objection, or which the court has ordered stricken from the record, do not constitute evidence and must not be considered by the jury."

Finally, Rivera contends that the evidence was insufficient on all counts to support his conviction, with or without the evidence of his presence at the hotel. We will consider that evidence. The Government submitted in its brief that the evidence was patently sufficient on count one, conspiracy to distribute, and was sufficient on an aider-abettor theory as to counts two and three, possession with intent to distribute and distribution. On oral argument the Government voluntarily stated that the evidence on the last two counts was "weak."

 We find the evidence easily sufficient to sustain the conspiracy count. Rivera was present at the formative meetings, volunteered to count the money, vouched for Zapata, and expressed anger when the agents could not perform on June 22nd. However, on the two substantive counts, the sum of the evidence is (1) that Rivera drove Skwierc to the hotel on June 23rd, and (2) that he was in the hotel, alone in a different room. These facts are, in our view, insufficient to support the conviction on counts two and three, on an aider and abettor theory.

Therefore, the conviction of Benjamin Rivera on count one is affirmed. His conviction on counts two and three is reversed, and the District Court is ordered to dismiss those counts. The conviction of Dennis McGuire on each of the three counts is affirmed.

AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.

9. *Staples v. United States,* 320 F.2d 817 (5 Cir. 1963), which appears similar to this case at first glance, is distinguished. There, this court required suppression of evidence found in the search of a hotel room using a key found in an earlier search. The *Staples* holding turned on the illegal character of the first search, yielding the key. The arrest of Skwierc and the subsequent search of her purse were lawful. We do not understand Appellant to argue otherwise.