UNITED STATES of America, Plaintiff-Appellee,

v.

James William MILLER, Defendant-Appellant.

No. 80–5438.

United States Court of Appeals, Fifth Circuit.* Unit B

Dec. 18, 1981. Rehearing Denied April 26, 1982.

---

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

John D. O'Brien, Panama City, Fla. (Court-appointed), for defendant-appellant.

David L. McGee, Kevin M. Moore, Asst. U. S. Attys., Tallahassee, Fla., for plaintiff-appellee.

Before RONEY, VANCE and RANDALL, Circuit Judges.

PER CURIAM:

In a companion case to *United States v. Ward,* 665 F.2d 348, Miller was convicted of (1) receiving, disposing of, and transporting counterfeit motor vehicle titles in interstate commerce; (2) disposing of stolen vehicles in interstate commerce; (3) conspiring to commit the above offenses; and (4) concealing, bartering, and disposing of stolen vehicles in interstate commerce. Questioning the sufficiency of the evidence, the impeachment of a witness, and the admissibility of certain statements, Miller appeals. We affirm.

In brief, the facts are these. A Peterbilt tractor and Fruehauf trailer were stolen in Alabama in October 1977. A White truck was stolen the same month in Mississippi. Miller's alleged coconspirator Ward had counterfeit Missouri motor vehicle titles prepared in Florida. Miller signed the false titles as the seller of the stolen vehicles in Nebraska. Ward and Miller were indicted together, but were tried and convicted separately.

## Sufficiency of Evidence

Initially, Miller attacks his conviction for concealing, bartering, and disposing of stolen motor vehicles on the ground he had no physical contact with the vehicles. 18 U.S. C.A. § 2313 provides that whoever conceals, barters, or disposes of a motor vehicle moving in interstate commerce, knowing the same to have been stolen, shall be fined or imprisoned. The statute does not define "conceals." Defendant contends the Government must show a physical act in relation to the vehicles themselves in order for him to be convicted of concealing them.

Although this Court recognized in *United States v. Casey,* 540 F.2d 811 (5th Cir. 1976), that there must be some overt physical act on the part of the defendant in order to support a conviction under section 2313, the physical act need not include contact with the vehicle or a physical hiding of the vehicle. Altering title papers was specifically found to be a sufficient physical act to fall within the broad terms of the statute. *Id.* at 815. Use of the word "conceal" in the statute was meant to cover a "physical attempt to disguise the vehicle—to make it seem to be one other than the one which was stolen." *Id.* Use of false titles was held to be just such a physical act of deception.

Defendant's reliance on *United States v. Mahanna,* 461 F.2d 1110 (8th Cir. 1972), is misplaced. In *Mahanna,* the court held insufficient to support a conviction evidence that Mahanna "may have signed" a name to the false title document or that the bill of sale was "probably" written by Mahanna in another transaction. The court, however, upheld Mahanna's conviction in another transaction in which he accompanied the seller of a stolen vehicle to the sale and accepted the cash payment.

In this case, the evidence showed that the trucks were stolen outside of Nebraska. They were sold on consignment to Robert Crawford by a man whom Miller brought to Crawford. Miller introduced the seller of the stolen vehicles to Crawford. Miller later represented himself as the seller of the stolen vehicles when he signed the false vehicle titles before a notary. The notary

identified Miller as the person who signed the false titles as the seller of the vehicles. An expert identified the signatures on the titles as being Miller's handwriting. This evidence is sufficient for conviction under *Mahanna*.

██ Miller argues that the evidence did not show he transported or caused the transportation of the false titles from Florida to Nebraska. This Court requires only the *fact* of interstate transportation to be shown under 18 U.S.C.A. § 2314. *United States v. Mitchell*, 588 F.2d 481, 483–84 (5th Cir.), *cert. denied*, 442 U.S. 940, 99 S.Ct. 2881, 61 L.Ed.2d 310 (1979). Ward had the false titles in Florida. Miller signed them as the seller of the stolen vehicles in Nebraska. Ward's girlfriend testified that Ward was going to give the titles to Miller. The fact of interstate transportation is sufficiently shown.

*Impeachment With Prior Statement*

Next, Miller alleges that the impeachment by the Government of Crawford, a Government witness, through the use of his prior statement was improper. Miller admits the statement could be used to impeach Crawford's credibility, but argues the Government's use of the statement for impeachment was a guise to get the statement, inadmissible as hearsay, before the jury as positive evidence. The Government argues it used the statement for impeachment purposes only and impeachment was proper since Crawford was a hostile witness whose testimony differed from his prior statement on relevant issues.

██ Clearly, the Government can impeach its own witness, *see* Fed.R.Evid. 607, and evidence of a prior inconsistent statement of the witness may be admitted for that purpose even though the statement tends directly to inculpate the defendant. *See United States v. Sisto*, 534 F.2d 616, 622 (5th Cir. 1976); *Williams v. United States*, 394 F.2d 821 (5th Cir.), *cert. denied*, 393 U.S. 890, 89 S.Ct. 211, 21 L.Ed.2d 169 (1968). Of course, the prosecutor may not use such a statement under the guise of impeachment for the *primary* purpose of placing

before the jury substantive evidence which is not otherwise admissible. *United States v. DeLillo*, 620 F.2d 939, 946 (2d Cir. 1980), *cert. denied*, 449 U.S. 835, 101 S.Ct. 108, 66 L.Ed.2d 41 (1981); *United States v. Rogers*, 549 F.2d 490, 497 (8th Cir. 1976), *cert. denied*, 431 U.S. 918, 97 S.Ct. 2182, 53 L.Ed.2d 229 (1977); *United States v. Morlang*, 531 F.2d 183, 190 (4th Cir. 1975); *United States v. Dobbs*, 448 F.2d 1262 (5th Cir. 1971).

There is nothing in the record to indicate Crawford was called to the stand merely to get his FBI statement before the jury or to establish facts beyond the alleged contradiction. Under the Government's theory of the case, Crawford was the hub of a stolen truck ring in which Miller was involved. In his prior statement, Crawford had detailed Miller's involvement with the stolen trucks and identified him as the trucks' seller. There is nothing in the record to indicate the Government knew Crawford was going to deviate from his prior statement. Indeed, during his testimony at the prior trial of Ward, Miller's alleged coconspirator, Crawford explained Miller's involvement in a manner consistent with his prior statement.

On direct examination during Miller's trial, Crawford said he did not know that Miller had anything to do with the stolen trucks. He identified someone other than Miller as the seller of the stolen trucks. On redirect, he had trouble at times remembering facts and became irritable. During impeachment on redirect, he stated he was "just not coherent" and that he had "given up" on himself. His prior statement was used only to indicate those areas where Crawford's present testimony contradicted his earlier statement.

██ Limiting the use of the statement by the jury is usually done by the jury instruction. The instruction given in this case indicated a witness could be impeached by evidence showing that at some other time the witness had said something inconsistent with his present testimony. If a witness had been impeached it was the jury's duty to give the testimony the weight the jury

thinks it deserves. This instruction was of the type criticized in *Slade v. United States*, 267 F.2d 834, 839 (5th Cir. 1959), because such an instruction fails to explain to the jury that the impeachment evidence is only to reflect on the witness' credibility and is not to be used to establish facts. Defense counsel here, however, did not object to the instruction. Under the "plain error" standard of review, *see United States v. Garcia*, 530 F.2d 650, 654–56 (5th Cir. 1976); *Upham v. United States*, 328 F.2d 661 (5th Cir. 1964), it appears that Miller did not suffer prejudice due to the absence of a limiting instruction. The Government proved the elements of each offense without the use of Crawford's statement. The facts and circumstances of this case leave no doubt that the jury's verdict would not have been different even if the proper instruction had been given. *See United States v. Sisto*, 534 F.2d 616, 624 (5th Cir. 1976).

### Admissibility of Coconspirator Statements

After a hearing in chambers, the court admitted into evidence statements made by Ward, Miller's alleged coconspirator. One of the printers of the false motor vehicle titles testified that Ward said he intended to sell the titles to three unnamed truck drivers for $800 each. The other printer testified that Ward said he was going to give the titles to a trucker from a particular vicinity. Ward's girlfriend who also assisted in the printing of the titles testified that Ward told her he was going to give the titles to Miller.

■ Rule 801(d)(2)(E) of the Federal Rules of Evidence provides that statements made by a coconspirator of a party during the course and in furtherance of the conspiracy are not hearsay. In order for a coconspirator's statement to be admissible, the trial court must determine, based on substantial and independent evidence, that a conspiracy existed, that the declarant and the defendant were members of the conspiracy, and that the statement was made during the course and in furtherance of the conspiracy. *United States v. James*, 590 F.2d 575, 578–81 (5th Cir.) (*en banc*), *cert.*

*denied*, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979).

■ The evidence before the court at the time of the hearing showed that: (1) Miller was a trucker in the vicinity from which the trucks were to be stolen; (2) Ward knew Miller; (3) Ward arranged for the production of fraudulent motor vehicle titles; (4) during the time the titles were being made, Ward was seen with Crawford in Omaha, Nebraska; (5) Miller knew Crawford; (6) the false Missouri titles were finished and given to Ward in October 1977; (7) the trucks were stolen in October 1977; (8) the stolen trucks, false titles, and Miller ended up at Crawford's in late October 1977; and (9) Miller signed three of the false titles as the seller of the stolen trucks in Omaha. This is sufficient to show there was a conspiracy and that Ward and Miller were both members of it.

■ Contrary to Miller's argument, Ward's statements were made in furtherance of the conspiracy. This Court has noted that the "in furtherance of the conspiracy" standard must not be applied too strictly, "lest we defeat the purpose of the exception." *United States v. James*, 510 F.2d 546, 549 (5th Cir.), *cert. denied*, 423 U.S. 855, 96 S.Ct. 105, 46 L.Ed.2d 81 (1975). Mere conversation between coconspirators is not admissible under the exception. *Id.*; *United States v. McGuire*, 608 F.2d 1028, 1032 (5th Cir. 1979). Puffing, boasts, and other conversation, however, are admissible when used by the declarant to obtain the confidence of one involved in the conspiracy. *Id.* at 1033. Statements made by the coconspirator to allay suspicions are also admissible. *United States v. James*, 510 F.2d at 549–50.

It is important to note that each of the witnesses who testified as to Ward's statements also testified that he or she was knowingly involved with Ward in the production of the counterfeit Missouri titles. The conspiracy embraced not only the production of titles but also the disposal of the stolen trucks. Ward's statements to the printers could have been meant to keep the

identity of the ultimate recipient secret thereby furthering the conspiracy. Since all of the witnesses were involved in the printing, Ward's statements could have been meant to allay any suspicions the witnesses might have had as to the recipient of the titles. In any event, Ward's statements were clearly made in furtherance of the conspiracy. The trial court did not err in admitting Ward's statements against Miller.

We have examined each of Miller's contentions on appeal and perceive no reversible error.

AFFIRMED.